BARTMAN, Respondent, vs. WISCONSIN MICHIGAN POWER COMPANY, Appellant.

*March 5—April 3, 1934.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee and *Homer H. Benton* of Appleton, and oral argument by *Mr. Benton.*

*Frank F. Wheeler,* attorney, and *James I. McFadden* of counsel, both of Appleton, for the respondent.

FAIRCHILD, J.  A customer of a utility who has tampered with metering devices on his premises does not stand in the same position with relation to his right to demand further service from the utility as does one who has not been guilty of such an act.  A public utility must adopt and enforce reasonable rules, in rendering the service to the public required of it under its indeterminate franchise, to protect itself against imposition by individuals.  The pleadings in this case show with relation to the requirements of paying for reconnection services and the cost of the protective device:

"That the said requirements of the defendant are in accord with the usual, customary, and ordinary rules of the defendant on file with and approved by the Public Service

Commission of the state of Wisconsin, and the defendant is not able, in any manner within the type of electric service it is required to supply to the public, to prevent further wilful interference and tampering by the plaintiff with the metering equipment and the connections thereto, and the wrongful diversion of electric current by the plaintiff so that the amount thereof cannot be properly measured and registered upon the meter."

In the enforcement of those rules the company may discontinue service to such an offending customer. The facts of this case, as disclosed by the pleadings and motion papers, are that the respondent inserted a piece of wire in the electric meter on his premises and so connected the ends thereof with other portions of the mechanism that the meter did not register the amount of electricity consumed on the premises. This particular act of so placing the described device is not denied by the respondent and the circumstances indicate that this arrangement was so placed by the respondent deliberately and wilfully.

The situation existing at the time that the application for the preliminary injunction was made did not show any wrongful act done or threatened by the appellant, and did show a wrongful act of respondent of such a nature as to make him subject to the enforcement of the rules referred to. The utility, because of the wilful tampering with the meter equipment, discontinued the service until the customer should pay the sum of three dollars to cover the cost of the reconnecting service, and the further sum of three dollars, the actual cost of a protective device and installation thereof at the meter on the respondent's premises.

Sec. 343.33 (2) of the Statutes provides:

"Any person who wilfully, with intent to cheat or defraud the buyer or seller of electric current, . . . shall make or cause to be made . . . any contrivance, or any connection as to conduct or supply or intended to conduct or supply

electric current . . . without passing through or being registered by a meter . . . so as to cause or be intended to cause a false registration of the amount of electric current . . . consumed with the intent to cheat or defraud the seller or buyer of such electric current . . . shall be punished by imprisonment . . . or by a fine. . . ."

The following cases are authority for the rule that a utility, upon discovering the violation of a similar statute by one of its consumers, need not reconnect its service until the customer pays the charges similar to those exacted in this case: *MacIntosh v. Greensboro Gas Co.* (Pa.) P. U. R. 1929 A, 228; *Crowe v. Union Elec. L. & P. Co.* (Mo.) P. U. R. 1930 C, 375; *Collins v. Union Elec. L. & P. Co.* (Mo.) P. U. R. 1930 D, 446; *Warner v. Union Elec. L. & P. Co.* (Mo.) P. U. R. 1930 E, 359; *Tench v. Mentone Water Co.* (Cal.) P. U. R. 1926 A, 834; *Sullivan v. Union Elec. L. & P. Co.* (Mo.) P. U. R. 1926 D, 705.

An injunction issued in the form of this injunction and interfering with the appellant's lawful and reasonable course of procedure is improvidently granted. The respondent's right to the injunction does not arise merely because he says that without it he would suffer irreparable injury. To restrain the appellant from following the course it did is to set aside for the time being, upon the simple request of a wrongdoer, reasonable rules necessary for the proper conduct of its business, and to compel it to surrender rights expressly conferred upon it by law to one who, under the facts which must at this time be accepted as established by his silence when confronted with specific accusations, admits he does not present his petition with clean hands. The caution with which mandatory injunctions are used has not been followed, and cannot be satisfied where, in issuing that writ, fixed rights are brushed aside for the benefit of a wrongdoer. *Gimbel Bros. v. Milwaukee Boston Store,* 161 Wis. 489, 154 N. W. 998; *State ex rel. Superior v. Duluth*

*St. R. Co.* 153 Wis. 650, 142 N. W. 184; 1 High, Injunctions (4th ed), p. 3, § 2. The pleadings here show that the appellant was acting within its rights and that the respondent could have had all he asks for by complying with a reasonable and fair rule of the utility.

The concrete facts authorizing the appellant to enforce its right to disconnect the service to respondent's premises are set forth in pleading and affidavit. The respondent does not directly meet the accusations arising out of these facts. He chooses to seek refuge in the general statement that the service was disconnected, that appellant's refusal to serve him "is wrongful and contrary to the requirements of sec. 196.03 of the Wisconsin Statutes." That section requires the utility to furnish service at just and reasonable rates, but does not require service to be rendered to one who has done the things charged against the respondent in this case. The respondent, upon the hearing upon the order to show cause, was specifically advised of appellant's claim, and nowhere does it appear that he denied the presence or use of the so-called "jumper" device.

At the time of the application for the injunction the appellant was proceeding reasonably and lawfully, the respondent was the transgressor. We are of the opinion that the temporary injunction should not have issued requiring the appellant to furnish unconditionally electrical service to the premises of the respondent. There being no ground for interference by a court of equity to restrain the appellant from discontinuing the service because of respondent's refusal to comply with a rule which must be treated here as reasonable, the order granting the injunction must be reversed.

*By the Court.*—Order reversed.