200 So. 617

**ALABAMA POWER CO. v. DUNLAP.**

6 Div. 814.

Supreme Court of Alabama.

Feb. 27, 1941.

Pennington & Tweedy, of Jasper, for appellee.

Arthur Fite, of Jasper, and Martin, Turner & McWhorter and James Baldone, all of Birmingham, for appellant.

THOMAS, Justice.

The suit was for damages in two counts for the· alleged wrongful discontinuance of electric service to plaintiff's residence. The pleading was in short by consent, and the case was submitted to the jury on the simple negligence and wanton counts.

The evidence was in effect that appellant was a public utility furnishing electric serv-

ice in Jasper, Alabama, where its service was discontinued as to appellee-customer. Said customer lived with his wife, children and three boarders; electric service had been furnished appellee's residence during the period from October, 1937, to March 17, 1939, when the same was discontinued. The house in question contained five rooms, a porch which was lighted, the only other electric appliance in use being an electric iron; that appellee owned a radio, which was operated by electricity, but plaintiff's wife testified that such radio was not in use at the time electric service was discontinued, but that they had a battery radio which was being used at such time. The said electric service was discontinued by appellant on March 17, 1939, under circumstances later to be indicated, and appellee was without such service until July, 1939.

After the discontinuance of electric service, appellant required appellee to make such changes in electric wiring in said residence before service would be restored as were approved by the Public Service Commission. The customer was duly notified of such required changes, but did not make them until July, 1939, when the electric service was promptly restored.

The evidence further shows that during the period from May, 1938, to February, 1939, there was consumed on said premises, registered by an electric meter, certain kilowatt-hours of electricity, the amount ranging from forty to eighteen kilowatt-hours per month; that for the month of February, 1939, the electric meter registered fourteen kilowatt-hours; for the month of March, 1939, the meter registered only ten kilowatt-hours.

Appellant's meter-reader testified that on March 13, 1939, he went upon the premises of Mr. Dunlap for the purpose of taking the electric meter reading and noticed that such instrument was not registering electricity consumption, even though a radio was playing at the time in appellee's house; that the fact of such playing of radio taken with the low consumption of electricity for the last two months, led him to report such facts to appellant's office in said city.

Mr. Preston, testifying for appellant, said he was its "service man" and, when he received the report made by Mr. Belue (the meter reader), he accompanied Mr. Copeland, another one of the service men, on March 16, 1939, to appellee's house, examined the electric meter and found that it was not registering the consumption of electricity; that upon further investigation of the premises, it was disclosed that approximately twelve feet above the meter a wire had been attached to appellant's service wire, which transmitted electricity to the residence, such attached wire running from the service wire, passing through a hole in the wall of the house to the attic thereof, and that the electric current was being transmitted into the house without passing through the meter. He further testified he directed Mr. Copeland to advise appellant's district manager or office engineer of such condition; that immediately thereafter the office engineer, Mr. Ingersoll, proceeded with said three employees to appellee's residence and noticed the condition existing as to the circuit transmission to the residence around, instead of through, the electric meter. Employees Copeland and Ingersoll stated, as witnesses for appellant, that they noted the conditions indicated by witness Preston. Mr. Preston testified that the following day he reported the condition found to District Manager Jackson, who directed him to discontinue electric service, and pursuant to such instruction, on March 17, 1939, electric service was discontinued to that residence.

The General Rules for Electric, Gas, Water, Telephone and Telegraph Utilities, as to suspension of service to a customer, were introduced in evidence. Subdivision (c) of Rule 11 of said rules is to the effect that any utility may suspend service to a customer without notice and without terminating the agreement for service in the event the instruments, contrivances and/or appliances used in conducting, supplying, measuring or registering gas, steam, water, and/or electricity serving customer's premises are altered and/or changed in any way except by natural causes so as to cause such instruments, contrivances and/or appliances to destroy, alter or prevent the registration of the service received. The last part of said rule is as follows: "The utility shall not be required to restore service after suspension in accordance with this rule until the customer has complied with all reasonable rules of the utility designed to prevent a recurrence and the utility has been reimbursed for the full amount of service rendered."

Witness Preston testified that pursuant to Mr. Jackson's instructions, after he had disconnected the service, and on the same day, he mailed appellee a letter, signed by Mr. Jackson, as district manager of the

Alabama Power Company, containing, among other things, the following:

"Our attention has been called to certain irregularities resulting in improper meter registration of current used, as a result of which we have cut off electric service to the premises which you occupy located at: 18th Street & 7th Avenue, Jasper, Alabama.

"Before service is reestablished, it will be necessary to make certain changes in wiring and to make certain other adjustments.

"If you will call on the undersigned, we will attempt to adjust these irregularities so that service may be re-established to your premises."

Appellee admitted receiving such letter and testified that he went to see Mr. Jackson and was advised by him that it would be necessary for appellant's service wire which ran to appellee's premises to be enclosed in a cable for a distance of several feet out of the house before electric service would be re-established. It is without dispute that appellee did not make the requested change in the wiring until July, 1939, when such electric service was promptly restored.

The testimony by Mr. Grimes was that he made the changes in the electric wiring in July, 1939, which resulted in the restoration of electric service and that at such time he found the insulation on the service wire had been cut for approximately an inch and that about a foot from the place where the insulation was cut there was a hole in the wall of the attic.

The testimony for appellee fails to disclose that no such wire passed through the hole in the wall, passing around the meter, and was attached at the time the service was discontinued.

Three electricians examined the premises shortly after discontinuance of electric service and they found no such wire attached, and that the house wiring was satisfactory from a safety standpoint at the time of their examination.

■ Under the state of facts as given the jury for appellant by Preston, Copeland and Ingersoll as to the condition of the wiring at the time service was discontinued on March 17, 1939, and as to the condition of the wiring about a week thereafter when inspected by Hill, Grimm and Bedenbaugh (testifying for appellee), a material conflict in the evidence was presented which warranted the submission to the jury of count one, under the rules that obtain. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

This conflict in the evidence is further shown by the testimony of Mrs. Dunlap and plaintiff to the effect that no wire was affixed to appellant's service wire so that electric service would pass from its line to the residence without passing through the meter; that the condition of the wiring as testified to had been unchanged since they occupied the residence; that they had a radio operated by electric service which was in the shop for repairs at the time in question, and that the only radio in the house and being then operated was a battery set.

The only evidence as to damage suffered by reason of the discontinuance of service was by appellee's wife, wherein she stated that they purchased two kerosene lamps, the cost or value of the lamps installed not being disclosed; and that they were inconvenienced by the lack of service of lights and the use of their electric iron during the period from March 17, 1939, to sometime in July, the same year.

■ The authorities in this jurisdiction and others are to the effect that a public utility has the right to discontinue service without notice under rules authorized by public service commissions for public utilities. Birmingham Gas Co. v. Sanders, 26 Ala.App. 455, 162 So. 531; Bartman v. Wisconsin Michigan Power Co., 214 Wis. 608, 254 N.W. 376; Hoberg v. New York Edison Co., 144 Misc. 726, 258 N.Y.S. 701; Eff-Ess, Inc. v. New York Edison Co., 237 App.Div. 315, 261 N.Y. S. 126. The above cases are to the effect that a customer of a utility, who has tampered with metering devices on his premises, does not stand in the position with the right to demand further service from the utility as does one who has not been guilty of such an act. That a public utility must adopt and enforce reasonable and fair rules in rendering the service to the public required of it under its indeterminate franchise to protect itself against imposition by individuals and service may be restored on compliance with the reasonable rules obtaining as to correction of wiring and payment of proper charges in the premises.

It follows from the foregoing that a jury question was made under count one.

■■ The appellant-defendant duly requested the court in writing for the affirma-

tive charge as to the wanton count two. In Birmingham Water Company v. Wilson, 2 Ala.App. 581, 56 So. 760, a suit for wrongful discontinuance of plaintiff's water supply, the language of Mr. Chief Justice Stone was quoted with approval from Wilkinson v. Searcy, 76 Ala. 176, as follows: "* * * that to authorize punitive, exemplary, or vindictive damages (different names for the same thing), there must be 'gross negligence within the strictest signification of the phrase, which must be construed to mean such entire want of care as to raise a presumption that the person in fault is conscious of the probable consequences of his carelessness, and is indifferent, or worse, to the danger of injury to the persons or property of others;' or that the act complained of 'was done willfully [in its strong sense], or was the result of that reckless indifference to the rights of others, which is equivalent to an intentional violation of them;' or 'where the injury has been wanton, or malicious, or gross;' or 'where fraud, malice, or oppression appears;' or, we may add, where the taking is accompanied with violence, or insulting or contemptuous language or demeanor. * * *"

We may add there was no evidence disclosed by the record of such wanton conduct or conscious willfulness to inflict injury upon appellee or members of his household by appellant's employes or any one of them. Under the rules that obtain there was error for the trial court to submit to the jury for consideration count two.

We are, therefore, brought to a consideration of the court's refusal to give to the jury charge number fifteen. It is shown by the evidence that appellee did not use reasonable diligence or effort to mitigate his damages. In appellant's letter of March 17, 1939, to appellee, notifying him of the discontinuance of service for irregular wiring in the house, appellant informed appellee that certain necessary and reasonable changes in the wiring would have to be made by him under the rules that obtain before service could be restored. Appellee made no attempt to remedy the situation as requested or to mitigate his damages. This he was required to do under the rules that obtain in this court. Werten v. Koosa & Co., 169 Ala. 258, 53 So. 98; American Ry. Express Co. v. Judd, 213 Ala. 242, 104 So. 418.

We may add that the request made by appellant to appellee with respect to a change in the wiring required only a small expenditure of money to remedy the defect. Notwithstanding this, he made no effort to mitigate or to abate his damages until several months later, for which time he was without the use of electric service.

There are several objections and exceptions reserved on the introduction of the evidence. No error was committed in the sustaining of objections to Mrs. Dunlap's testimony as to what her husband did or was engaged in at a previous time. While great latitude is allowed on cross-examination, the rule did not authorize the introduction of collateral matters. Snell v. Roach, 150 Ala. 469, 43 So. 189; Phoenix Insurance Co. v. Copeland, 86 Ala. 551, 6 So. 143, 4 L.R.A. 848; Clark v. Zeigler, 85 Ala. 154, 4 So. 669.

The question to Mrs. Dunlap: "Did they ever charge you or did you have knowledge you were charged or Mr. Dunlap or some of you all with switching the wires around so electricity would not go through the meter and not be paid, until this morning?", was improper and appellant's objection thereto should have been sustained.

The questions assigned as error, directed by plaintiff to Mr. Ingersoll, on cross-examination, were as follows:

"Will you tell the jury why you did not tell Mr. Dunlap or his wife about that condition?

"You have got no reason. He had been a satisfactory customer, he had always paid his bill on the date due, every one of them?"

The rules against the examination of a witness on collateral facts have application here. The questions and answers were of collateral facts, and objection thereto should have been sustained.

Error is assigned upon the court's refusal to give to the jury appellant's requested written charge number thirteen, which is: "I charge you that you cannot award plaintiff more than nominal damages in this case." Said charge was properly refused under the evidence supporting count one.

It results, therefore, from the foregoing that the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.