416 So.2d 729 (1982)
Gregory Lee McGEHEE
v.
Louise Shaw HARRIS.
80-513.
Supreme Court of Alabama.
June 30, 1982.
Stephen D. Heninger of Hare, Wynn, Newell & Newton, Birmingham, for appellant.
Herbert W. Peterson of Rives, Peterson, Pettus, Conway, Elliott & Small, Birmingham, for appellee.
PER CURIAM.
Gregory Lee McGehee (plaintiff) brought action against Louise Shaw Harris (defendant) for injuries he sustained as the result *730 of a collision between his motorcycle and her automobile. The case was tried before a jury in the Circuit Court for Jefferson County. The trial court granted defendant's motion for a directed verdict against plaintiff's count alleging wantonness, but allowed the case to go to the jury on the count alleging negligence. The jury found both defendant and plaintiff negligent and the trial court instructed it to return a verdict for the defendant. The jury did so and judgment was entered accordingly. Plaintiff perfected this appeal after the denial of his motion for a new trial.
Two issues are presented for our review in this appeal. The first is: Did the trial court properly enter a directed verdict in favor of the defendant on plaintiff's count alleging wantonness? The second issue is: Did the trial court properly deny plaintiff's requested jury charges founded on the rules of the road contained in Code 1975, §§ 32-5-112(a) and 32-5-115? After our review of this appeal, we conclude that the trial court properly granted defendant's motion for a directed verdict on the count alleging wantonness, and properly denied plaintiff's requested jury charges.
The pertinent facts are as follows. On January 3, 1978, plaintiff was riding his motorcycle on Glynn Drive in Birmingham, Alabama. Plaintiff was traveling north toward defendant's home located on the east side of Glynn Drive. Defendant's home is located on the downward side of a hill as one travels north on Glynn Drive. Testimony related that one traveling northerly could not see traffic on the downward side of the hill until one reached its top. Both plaintiff and defendant testified that they first saw each other at the time plaintiff came over its top. The parties' testimony also was consistent and in agreement that defendant's vehicle already was in the road at the time the parties first saw each other. Plaintiff was familiar with the road prior to the date of the collision. The defendant had lived at her residence for twenty-four years. The exact distance between plaintiff and defendant when they first saw each other is uncertain. Defendant testified that plaintiff was seven or eight car lengths away. Plaintiff testified that it may have been 25-30 feet. Whatever the exact distance may have been, it is clear that it was relatively short. When the collision occurred, part of defendant's car was over the line dividing the two lanes of travel on Glynn Drive. Plaintiff struck defendant's car in the area of the passenger door on the right side of defendant's two-door, 1969 Ford Fairlane automobile. Although plaintiff's motorcycle had no speedometer, plaintiff testified he was traveling 18 to 20 miles per hour when he first saw defendant. Plaintiff testified that defendant was backing slowly when he first saw her. Defendant's testimony was similar. In her words she was backing at a normal speed.
Plaintiff theorizes that defendant acted in a wanton manner in causing the collision. Plaintiff argues that because defendant recognized his peril, she was obligated to do more than merely continue backing her automobile in a normal manner. He contends that defendant was obliged to take action to avert the recognized danger that she had created. Plaintiff takes the position that had defendant backed her vehicle more quickly, she could have cleared plaintiff's lane of travel for him.
At the outset it is appropriate that we note some basic principles regarding wantonness and the propriety of a directed verdict. A party's request for a directed verdict is governed by the following standard of review.
Where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the opponent. When a reasonable inference may be drawn, which is adverse to the party requesting the directed verdict, the directed verdict is properly refused.
Alabama Power Company v. Robinson, 404 So.2d 22 at 24 (Ala.1981); Alford v. City of Gadsden, 349 So.2d 1132 at 1135 (Ala.1979); Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).
A directed verdict properly is granted only where:

*731 [T]he facts are such that all reasonable men must draw the same conclusion from them.... Unless the evidence is free from doubt or adverse inference, the question is for the jury. Alabama Power Co. v. Guy, 281 Ala. 583, 206 So.2d 594.
. . . .
In civil cases, a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint....
Alabama Power Company v. Robinson, at 25; Turner v. People's Bank of Pell City, 378 So.2d 706 at 709 (Ala.1979); Draughon v. General Finance Credit Corp., 362 So.2d 880 (Ala.1978).
This court has made the following observation regarding wantonness.
Each case is bound by its material facts; that before it can be said an act or failure to act is wantonly done or omitted and an injury resulting thereby is wantonly inflicted, it must be shown that the party charged with committing the wrong or omitting to reasonably act in that behalf, had knowledge of the danger, present or impending, to the other party or parties so situated, and being conscious (from his knowledge of existing conditions and impending danger) an injury would likely or probably result from his conduct or omission to act, with reckless indifference to consequences, consciously and intentionally did the wrongful act, or omitted to do or discharge the known duty in the premises to avert such danger, and which produced the injurious result. Birmingham Electric Co. v. Turner, 241 Ala. 66, 1 So.2d 299; Alabama Power Co. v. Dunlap, 240 Ala. 568, 200 So. 617; Feore v. Trammel, 212 Ala. 325, 102 So. 529; Shepard v. Louisville & N. R. Co., 200 Ala. 524, 76 So. 850.
Simon v. Goodman, 244 Ala. 422 at 424, 13 So.2d 679 at 680 (1943) (emphasis added).
Applying the above-quoted principles, we conclude that the trial court correctly entered a verdict against plaintiff on his wantonness count. Although plaintiff insists that defendant was aware of the danger presented by the circumstances, the testimony of both parties was to the contrary. Neither party was conscious that "an injury would likely or probably result ...." Plaintiff called the defendant as an adverse witness and elicited the following testimony.
Q. Insofar as you were concerned, when you first saw him come over that hill were you perceiving any sort of danger or fear that there might be a collision?
A. Yes, sir.
Q. So when you first saw him come over the hill, you thought there was a chance that there could be a collision?
A. Yes, sir, if I didn't get the lane cleared.
Q. But you kept on backing up like you normally do; isn't that right?
A. Yes, sir.
Q. And then at some point as you were backing up normallyyou testified earlier that you saw Greg switch lanes about halfway between you and he; is that right?
A. Yes, sir.
Q. And then you stopped?
A. Yes, sir.
Q. And then a collision occurred?
A. Yes, sir.
. . . .
Q. When you saw Greg was crossing over from his lane over to the other lane, did it appear to you that he was doing that on purpose?
A. Yes, sir.
. . . .
Q. Did it look like he was in control of his motorcycle at that time?
A. Yes, sir.
Q. So, just so we get this down, then I'm through, Mrs. Harris, with my questions.
You were backing out and saw Greg, up here (indicating), and then you kept your eyes on him; is that right?
A. Yes, sir.
Q. And you knew there was a possibility of a collision?

*732 A. Yes, sir.
(Emphasis added.)
Plaintiff testified to a similar effect on cross-examination:
Q. All right. Did you on the afternoon of this accident have any judgment or opinion how much distance it would take you to stop going at whatever speed you were going when you first saw her car?
A. No, sir, I didn't. I didn't know I was going to hit the car.

(Emphasis added.)
The mere "possibility," or "chance," that there "might be" a collision does not rise to an awareness that injury "would likely or probably result" as stated in Simon v. Goodman. Thus, wantonness cannot be ascribed to defendant at the time the parties first observed each other.
The subsequent actions of the parties, from the time they first observed each other until the collision, also convinces us that plaintiff's count alleging wantonness is unfounded. As plaintiff proceeded down the hill and approached defendant's automobile, he took action to avoid defendant. He testified to the following on direct examination:
Q. What did you do in between those thirty feet between when you first saw the car and you hit it?
A. I saw her backing out, and I slowed down. And then I got closer and II just put on the brakes and started sliding.
Q. Now, did you ever start to go to the left?
A. Yes, I did.
Q. And about when? Was that towards the end of that thirty or twenty-five feet or further back?
A. It was at the end of it.
Q. And what were you doing? Why were you going to the left?
A. Well, she was blocking mostly the right lane and a little bit of the left, and I was going to try to go around her.
Q. Did you ever get around her?
A. No, sir.
Defendant's testimony substantially agreed with plaintiff's.
Q. Whereabouts in that lane was he when you first saw him? Was he in his lane?
A. Yes, sir, coming over the top of the hill.
Q. And you were trying to clear his lane so he could drive on through?
A. Yes, sir.
Q. Continue, if you would. I'm sorry I interrupted you.
A. And about halfway down the hill he switched over into the left lane.
Q. Well, when you say, "halfway down", do you mean about halfway from between when you first saw him and when you hit?
A. Yes, sir.
. . . .
Q. Did he straighten up down here (indicating), or did he just keep on coming and go to the outside?
A. He kept coming until he got to my car, and then he laid his bike over and slid up under it.
Q. But it was about halfway from you; is that right?
A. Yes, sir, when he started switching over.
. . . .
Q. And when you saw him switch lanes, what did you do?
A. I tried to get the car cleared, but I seen he was going to hit me so I just stopped.
Q. Tried to get the car clear of what?
A. The right lane.
Q. The lane that he had been in when you first saw him?
A. Yes, sir.
Q. But when you saw him switch lanes you just stopped?
A. Yes, sir.
Q. And what was the reason you stopped?
A. I seen he was going to hit me so I just stopped.
The above facts, under any reasonable view, cannot support a claim of wantonness. We cannot agree that defendant's *733 actions, even when viewed most favorably to plaintiff, constitute "reckless indifference to the consequences," or that they show defendant "consciously and intentionally did some wrongful act or omitted some duty which produced injury to appellant...." Taylor v. Thompson, 271 Ala. 18 at 21, 122 So.2d 277 at 279 (1960). Previously, this court has held that a plaintiff's attempt to establish a case for wantonness amounted to no more than mere negligence, and that a directed verdict against a count for wantonness was given properly. Westbrook v. Gibbs, 285 Ala. 223, 231 So.2d 97 (1970); Taylor v. Thompson, supra. At most, that is the case here.
Next, we address plaintiff's claim that the trial court erred in denying his requested jury charges modeled on Code 1975, §§ 32-5-112(a) and 32-5-115.[1] Plaintiff requested the following charge based on § 32-5-112(a):
The driver of a vehicle entering a public highway from a private road shall yield the right-of-way to all vehicles approaching on such public highway.
His charge modeled on § 32-5-115 read:
The driver of a vehicle within a business or residence district emerging from an alley, driveway or building shall stop such vehicle immediately prior to driving onto a sidewalk or into the sidewalk area extending across any alleyway or private driveway, and shall yield the right-of-way to any pedestrian as may be necessary to avoid collision, and upon entering the roadway shall yield the right-of-way to all vehicle [sic] approaching on said roadway.
Although the trial court denied plaintiff's above-requested charges, he gave the following charge, also requested by plaintiff:
The driver of a vehicle shall not back the same unless it shall reasonably appear that such a movement can be made with safety and without interfering with other traffic.
The given charge was taken from Code 1975, § 32-5-72(a).
Although there are at least several bases upon which the trial court could have denied plaintiff's first two requested charges, one is adequately dispositive of this issue. The refusal of a requested written charge is not error where the trial court's oral charge covered the principles contained in the requested written charge. Bateh v. Brown, 293 Ala. 704, 310 So.2d 186 (1975); Long-Lewis Hardware Company v. Lightsey, 392 So.2d 545 (Ala.Civ.App.1981); M. C. West, Inc. v. Battaglia, 386 So.2d 443 (Ala. Civ.App.1980); Rule 51, Alabama Rules of Civil Procedure. Here, the given charge adequately covered the principles of law in the refused charges to the extent they were applicable to the facts of this case.
The defendant was not entering or emerging from her driveway. She was already in the road at the time the parties first saw each other. On direct examination plaintiff testified to the following:
Q. Now, where was Mrs. Harris' car when you first noticed it that day?
A. It was out of the driveway into the right lane.
Q. Now, we have used a photograph that's come into evidenceStep down here with the Jury, Greg, please.
. . . .
Q. Now, when you first saw her car, where were the front wheels?
A. They were right out of the gutter.
Q. Is there a gutter right in front of her driveway?
A. Yes.
Q. And that's where the front wheels were, just right outside the gutter; is that right?
A. Yes.
Plaintiff further explained the location of defendant's automobile on cross-examination:
Q. And when you saw her, her car was moving with the front wheels or the front of her car, I believe you said, just out of the gutter; is that right?
A. Well, they were out of the gutter.

*734 Q. Well, I said they werejust out of the gutter when you first saw her; is that right?
A. Right.
Q. And by out of the gutter you mean on the street side of the gutter?
A. Yes, sir.
Q. She was out in the street then with the front of the car
A. Yes, sir.
Q. the first time you ever saw her, right?
A. Right.
Defendant's testimony was consistent with plaintiff's:
Q. Did you ever see Mr. McGehee come over that hill?
A. Yes, sir.
Q. When did you see him come over the hill?
A. I had gotten out into the street and he come over the top of the hill.
Mitchell Burns resided on Glynn Drive, where the collision occurred. He observed the collision from a distance of approximately 100 yards. Burns was a friend of plaintiff, and a neighbor of defendant. He testified that as plaintiff came over the hill, the front wheels of defendant's automobile were in the gutter.
Under the facts adduced at trial, there was no basis for the giving of plaintiff's requested charges. The trial court ruled properly in denying them. Therefore, no error was committed.
The judgment of the trial court, for all of the foregoing reasons, is due to be affirmed.
AFFIRMED.
MADDOX, FAULKNER, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs specially.
TORBERT, C. J., and ALMON and SHORES, JJ., dissent.
JONES, Justice (concurring specially).
I am not sure that the oral instructions are adequate to cover the charge requested. The two charges deal with different rules of the road. I nonetheless concur because I view the requested charge as inapplicable to the facts of this case.
TORBERT, Chief Justice (dissenting).
I respectfully dissent. I believe it was error for the trial court to refuse to give the appellant's requested jury charges based upon Code 1975, §§ 32-5-112(a) and 32-5-115. The Court holds that the trial court's oral charge adequately covers the principles in the requested written charges. I cannot agree. The trial court charged:
"The driver of a vehicle shall not back the same unless it shall reasonably appear that such a movement can be made with safety and without interfering with other traffic."
The plaintiff's two refused charges stated that a vehicle entering the highway from a private road or drive and within a business or residential district, shall yield the right-of-way to all vehicles approaching on the public highway. No mention of §§ 32-5-112(a) and 32-5-115 was made to the jury, though the defendant was entering the road from her driveway when she first saw the plaintiff.
Upon seeing the plaintiff, the defendant failed to yield the right-of-way, continued to back out of the private drive, and did not clear the way for him to go around her. The evidence presented at trial showed that these two sections of the Code were directly applicable, since the defendant failed to take any measures to yield the right-of-way to the plaintiff.
It is likewise clear that the court's oral charge was inadequate. That charge merely stated that the driver shall not back a vehicle unless it reasonably appears that it can be done "with safety and without interfering with other traffic." This charge says nothing about entering a public highway, as was the case here. Neither does it mention the duty of the driver to yield the right-of-way to oncoming traffic. It simply instructs the driver to do the obviousto back with safety.
*735 For these reasons, I cannot concur with the majority. I believe it was error to refuse the two requested written jury charges and, as a result, I would reverse.
ALMON and SHORES, JJ., concur.
NOTES
[1] Both sections were repealed subsequent to the parties' collision by Acts 1980, No. 80-434.