Alma H. BENFORD, Plaintiff-Appellee,

v.

**RICHARDS MEDICAL COMPANY,**
Defendant-Appellant.

No. 85–7413.

United States Court of Appeals,
Eleventh Circuit.

July 7, 1986.

Robert F. Wagner, Lewis, Bowman, Sinclaire & Wagner and R. Robert Stommel, Indianapolis, Ind., for defendant-appellant.

Jim L. Wilson, Wilson & Day, Gadsden, Ala., for plaintiff-appellee.

Before TJOFLAT and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

ANDERSON, Circuit Judge:

### I.

Benford brought this diversity action against Richards Medical Company ("Richards") under the Alabama Manufacturer's Liability Doctrine, the Alabama Extended Manufacturer's Liability Doctrine, and the theory of implied warranty of merchantability. Richards was the manufacturer of the Bechtol Total Hip Prosthesis which was surgically implanted into Benford in an effort to alleviate problems Benford was having with her natural hip. The Bechtol Total Hip Prosthesis consists of two components: a polyethylene cup which replaces the natural hip socket and a stainless steel femoral stem which is surgically implanted into the femur after removal of the head of the femur. The femoral stem component of the Bechtol Total Hip Prosthesis which was implanted into Benford allegedly suffered a fatigue fracture after surgery and had to be replaced during a revision surgery. This lawsuit was based on injuries Benford suffered as a result of the allegedly defective femoral stem and subsequent revision surgery.

The jury returned a verdict in favor of Benford and awarded her $165,000 in compensatory damages and $100,000 in punitive damages. Richards filed a motion for judgment notwithstanding the verdict and a motion for a new trial, both of which were overruled. This appeal followed in which Richards claims that there is insufficient evidence to support the jury's punitive damage award. Richards also raises three points of error in support of its assertion that the district court's finding of liability should be reversed. Specifically,

Richards contends (1) that the trial court erroneously excluded from evidence a 1981 industry standard on cast stainless steel for surgical implants; (2) that the trial court erroneously admitted into evidence alleged hearsay testimony; and (3) that the trial court erroneously denied Richards' motion for a mistrial. We reject Richards' last three enumerations of error and affirm the jury's finding of liability and award of compensatory damages. We vacate the jury's award of punitive damages because there is insufficient evidence in the record to meet the standard for such an award under Alabama law.

### II.

#### A. *Punitive Damages*

At the close of the evidence, the trial court refused to grant Richards' motions for a directed verdict and judgment notwithstanding the verdict on the issue of punitive damages. Richards now contends that the trial court's denial of these motions is error requiring reversal of the jury's punitive damage award. We agree.

Benford contends on appeal that because Richards had reason to know of the potential danger of using cast stainless steel in its product and did not heed that danger, the jury could properly infer the legal malice necessary for an award of punitive damages. Benford presented evidence that Richards had been advised not to use cast stainless steel in the femoral component. That advice came from Taussig Associates, Inc., a company employed by Richards to give Richards metallurgical evaluations of metals being considered for use in the femoral stem component of Richards' prosthesis. Although the negative recommendation from Taussig Associates is evidence that Richards was on notice of potential problems with using cast stainless steel, the record indicates that Richards' choice of metals was made only after Richards conducted extensive pre-market tests and thoroughly evaluated a number of metals.

Richards' choice of cast stainless steel for the Bechtol Total Hip was in part based

upon pre-market testing done on cast stainless steel for a similar product, the Tronzo Total Hip. This testing indicated that cast stainless steel was adequate for use in the Tronzo Total Hip. Richards also conducted tests on cast stainless steel, forged stainless steel, and cobalt chromium alloys specifically for choosing the metal to be used in the femoral stem of the Bechtol Total Hip. One of Benford's expert witnesses, Dr. Robert Rose, admitted that cast stainless steel, forged stainless steel, and cobalt chromium alloys were the commonly available metals used for total hip prostheses in the mid-1970's. Most other manufacturers during that time period used forged stainless steel or cast chrome cobalt for total hips, the same metals that Richards tested and evaluated as part of its decision-making process.

The evidence further shows that Richards' decision to use cast stainless steel was, in part, a matter of elimination. Of the three commonly used metals, Richards chose not to forge the stainless steel for most of the sizes of the Bechtol Total Hip because of supply problems. Richards chose not to use cast chrome cobalt based on recommendations by experts not to use that material, and because Richards' own tests showed the material to be unsuitable. Additionally, the evidence reflects that the state of knowledge in the industry at the time Richards decided to use cast stainless steel in its prostheses would not have put Richards on notice of potential problems with using that material.

Under Alabama law, in order to award punitive damages, the defendant's conduct must amount to one of the following: (1) "gross negligence," i.e., such entire want of care as to raise a presumption that the party at fault is conscious of the probable consequences of his carelessness, and is indifferent, or worse, to the danger of injury to the persons or property of others; (2) a "willful" act in the strongest sense, or the result of reckless indifference to the rights of others; (3) an act resulting in a "wanton, malicious, or gross" injury; or (4) "fraud, malice or oppression." *Alabama Power Co. v. Dunlap*, 240 Ala. 568, 200 So. 617, 621 (1941).

■ Our review of the evidence reveals only one negative opinion about cast stainless steel, i.e., the report from Taussig Associates. After Richards had conducted its own independent research and investigation of the available metals for use in total hip prostheses, it made the decision to use cast stainless steel in the Bechtol Total Hip. For a trial court to properly deny a motion for directed verdict, there must be substantial evidence opposed to the motion; that is, evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach a different conclusion. *Spurlin v. General Motors Corp.*, 528 F.2d 612, 614 (5th Cir.1976).[1] We cannot agree with Benford that a fair-minded jury could find that Richards' conduct reached the level of indifference or willfulness at which punitive damages are appropriate. *See Dunlap*, 200 So. at 621. In light of Richards' diligent evaluation, we conclude that the mere fact that Richards received one recommendation not to use cast stainless steel is insufficient as a matter of law to justify an award of punitive damages.

### B. *Liability*

■ 1. Besides its claim that punitive damages were improperly awarded, Richards also urges this court to reverse the jury's finding of liability. Richards raises three contentions which we address in turn. Richards claims that a new trial is required because the trial judge excluded from evidence a 1981 industry standard on the use of cast stainless steel in surgical implants. The 1981 standard was tentatively admitted into evidence subject to Richards proving its relevance later in the trial. The relevance of the 1981 standard was in issue because the events material to Benford's

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

claims occurred in the early 1970's. The trial judge ultimately refused to admit the standard into evidence. Record on Appeal, vol. 7 at 4–30 to 4–31.

Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent the clear showing of an abuse of discretion. *Hopkins v. Britton,* 742 F.2d 1308, 1311 (11th Cir.1984). Such a showing has not been made on appeal; thus, we conclude that the district court did not abuse its discretion in refusing to admit the 1981 industry standard.

■ 2. Richards' next contention on appeal is that the trial judge erred by admitting into evidence the deposition of an employee of Taussig Associates, Inc. As previously stated, Taussig Associates was hired by Richards to conduct a metallurgical evaluation of cast stainless steel for use in the Bechtol Total Hip. The employee testified that he heard Len Taussig, former president of Taussig Associates, advising a Richards representative on the telephone not to use cast stainless steel in the Bechtol Total Hip.

Richards claims that this deposition testimony is hearsay, not admissible under any hearsay exception. This assertion is without merit. The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The deposition is evidence that Richards was on notice of the potential problems with using cast stainless steel in the Bechtol Total Hip. As evidence not offered to prove the truth of the matter asserted, the deposition testimony was not subject to the general bar against hearsay and was properly admitted by the trial judge. *See* Fed.R.Evid. 802.

3. Richards' final claim on appeal is that the trial court erroneously denied Richards' motion for a mistrial based on Benford's violation of a pretrial order not to disclose to the jury the existence of other lawsuits involving the Bechtol Total Hip. Finding that the trial judge's ruling was not an abuse of discretion, we hold that the trial judge did not err in denying Richards' motion for a mistrial.

Upon Richards' motion in limine during a pretrial hearing, the trial court ordered Benford's counsel not to disclose to the jury or use the contents of a list of lawsuits involving the Bechtol Total Hip. During Benford's examination of Dr. Charles Bechtol, however, Benford's attorney asked the following question:

> All right, sir. And I'll ask you if it's not a fact, sir, that in the State of California, that there was a judgment rendered against you and Richards Medical Company, and Richards Medical Company paid all the money pursuant to that judgment?

Record on Appeal, vol. 10 at 7–34. Before the witness could answer, Richards objected to the question and the objection was sustained. The trial judge then gave the jury a lengthy precautionary instruction, advising them not to draw any inferences from that question.[2] Richards' motion for

2. In its precautionary instruction, the trial judge stated:

All right. Ladies and gentlemen of the jury, at the outset of this trial, I advised the members of the jury that there would be occasions in which the Court would have to consult with the lawyers, outside the presence and hearing of the jury, on matters of law that concern the Court alone and not the jury. I also advised you that if I sustained an objection to a question that goes unanswered by the witness, that you should not draw any inferences or conclusions from the question itself. And here, in connection with the last question that was asked by Mr. Wilson to Dr. Bechtol, about a

matter in California, I sustain the objection of the Defendant to that question, and I specifically instruct the jury and each member of the jury that you and the jury are not to draw any inferences or conclusions from the question itself, to which I have sustained an objection. In other words, ladies and gentlemen of the jury, I have ruled and do now rule, as a matter of law, that the question asked by Mr. Wilson to Dr. Bechtol is not a legal question and does not seek to elicit testimony that would be proper for the jury to consider. Now, you are the sole and exclusive judges of the facts in this case. You are the triers of the facts, but I am the sole and exclusive judge of

mistrial was overruled. Record on Appeal, vol. 10 at 7–40.

 The decision to grant a mistrial lies within the sound discretion of the trial judge since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury. *United States v. Satterfield,* 743 F.2d 827, 848 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). The trial judge was well aware of the seriousness of the impropriety, stating to Benford's counsel that "you're prejudicing the rights of your client, in my judgment, by insisting upon doing it, Mr. Wilson, because you may well be placing reversible error in the record." Record on Appeal, vol. 10 at 7–37. The trial judge obviously felt that his precautionary instruction was sufficient to cure the problem.

Richards cites *O'Rear v. Fruehauf Distributing Co.,* 554 F.2d 1304 (5th Cir.1977), in support of its contention that its motion for mistrial should have been granted. *O'Rear* is distinguishable from this case, however, in that it involved a much more egregious situation in which counsel made repeated violations of a pretrial order. In the instant case, Benford's attorney committed only a single violation of the trial court's order. On the record before us, we cannot conclude that the trial judge abused his discretion in denying Richards' motion for mistrial.

On the basis of the foregoing, the judgment of the district court is

AFFIRMED in part and VACATED in part.

the law. And I told you, at the beginning of this trial, that we didn't want you on this jury if you were going to reach a verdict in this case on the basis of what you thought the law was or ought to be; that you were to follow the law as stated by the Court. So, I again instruct you that you are not to draw any inferences or conclusions from this last question, which I have sustained an objection to. Record on Appeal, vol. 10 at 7–38 to 7–40.