A jury returned a verdict for the defendant, Ernest B. Miller, in this personal injury and property damage action filed against him by Clarence A. Partridge and his wife, Dorothy G. Partridge, who sued for loss of consortium. The Partridges appeal. We affirm.
The Partridges designated as the record on appeal less than the entire transcript of the proceedings below. Five of the nine issues presented for review in the Partridges' brief were raised for the first time on appeal. These five issues are not before this Court and cannot be addressed by us. Menefee v.Veal, 484 So.2d 437 (Ala. 1986). The following issues were properly presented for our review:
"Did the court err in granting [Miller's] motion for a directed verdict on the issue of wantonness at the close of the [Partridges' case]?"
"Did the court err in denying [the Partridges'] a directed verdict on the issue of contributory negligence at the close of [Miller's] case?"
"Did the court err in not admitting the accident report into evidence?"
"Did the court err in preventing [the Partridges] from showing statements made by [Mr. Partridge] to representatives of [Miller's] insurance company and the conduct of the insurance company's representatives, where [Miller] was alleging malingering and failure to mitigate [damages] on the part of [Mr. Partridge]?"
The accident occurred at approximately 5:00 p.m. on August 25, 1983, on Government Street in Mobile, Alabama. Mr. Miller, who was 86 years old at the time of the accident, was driving west; he turned across the eastbound lanes toward the entrance to a service station. Mr. Partridge was driving east in the outer eastbound lane. The right front fender of Partridge's automobile came into contact with the right *Page 587 
rear fender of Miller's automobile. Neither vehicle was exceeding the posted speed limit. Partridge testified that Miller was traveling so slowly that he assumed Miller did not see him.[1] Partridge also testified that Miller stated that he was attempting to turn off of Government Street upon the suggestion of his brother, who was a passenger in Miller's automobile at the time of the accident, because Government Street was too "confusing" in 5:00 p.m. traffic.[2] A more detailed recitation of the facts would not edify the bench or the bar, and the parties themselves are fully aware of all the facts. Suffice it to say that we have reviewed the facts thoroughly, and, although we are not concerned with Mr. Partridge's credibility as a witness, we feel compelled to note that Mr. Partridge's testimony was impeached by his own witness, a retired Presbyterian minister, who had known Mr. Partridge for 34 years and who testified that Mr. Partridge would lie about something or tell a different tale to his advantage. This witness contradicted a great deal of Mr. Partridge's testimony.
"Did the court err in granting [Miller's] motion for a directed verdict on the issue of wantonness at the close of the [Partridges'] case?"
This suit was pending on June 11, 1987; therefore, Ala. Code 1975, § 12-21-12, does not apply, and the applicable standard of review is the "scintilla rule." In Hood v. Murray,547 So.2d 75, 78 (Ala. 1989), this Court, quoting Caterpillar Tractor Co.v. Ford, 406 So.2d 854, 856 (Ala. 1981), stated the standard of review for a directed verdict, using the scintilla of evidence rule, as follows:
 " 'A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214
(Ala. 1978). . . .
 " 'In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc., v. Cash, 348 So.2d 476 (Ala. 1977).' "
Viewing the evidence most favorably to the Partridges, there is not a scintilla of *Page 588 
evidence that Miller "consciously and intentionally did some wrongful act or omitted some duty which produced injury" to the Partridges. McGehee v. Harris, 416 So.2d 729 (Ala. 1982). Such evidence is required to withstand a motion for a directed verdict on the issue of wantonness, and a trial court does not err in granting such a motion when the plaintiff has offered nothing more than evidence that presents a factual question as to a defendant's negligence. Whitmore v. Burge, 512 So.2d 1320
(Ala. 1987); Wilson v. Cuevas, 420 So.2d 62 (Ala. 1982);McGehee v. Harris, supra; Westbrook v. Gibbs, 285 Ala. 223,231 So.2d 97 (1970). The only reasonable inference that can be drawn from the evidence in the present case is that Miller failed to exercise good judgment in executing the turn. The Partridges offered evidence that tended to show only negligence on Miller's part, and the question of negligence was properly submitted to the jury for its resolution. The trial court did not err in directing a verdict for Miller on the issue of wantonness.
"Did the court err in denying [the Partridges] a directed verdict on the issue of contributory negligence at the close of [Miller's] case?"
The Partridges made an oral motion for a directed verdict as to the affirmative defense of contributory negligence at the close of all of the evidence. There was evidence that Partridge did not slow his vehicle or maneuver in an attempt to avoid the accident. There was evidence that his automobile was overloaded and that, even though he was driving within the posted speed limit, he was exceeding a safe speed considering the load of lumber he was transporting. The jury could have reasonably concluded that Partridge was contributorily negligent in not slowing his automobile, or in not moving to another lane to avoid colliding with Miller's automobile, or in driving too fast considering the load of lumber that he was transporting. The trial court did not err in submitting the issue of contributory negligence to the jury. Ashbee v. Brock,510 So.2d 214 (Ala. 1987).
"Did the court err in not admitting the accident report into evidence?"
The Partridges attempted to introduce an accident report prepared by Officer James J. Coker of the Mobile Police Department, who investigated the accident, as a past recollection recorded. Officer Coker had no independent memory of the accident and was allowed to refer to the report that he had prepared at the time of the accident in order to answer questions concerning the accident, but the trial court would not permit the Partridges to introduce the report. The Partridges claim that the failure to admit the report was reversible error, citing the following cases: Bennefield v.State, 281 Ala. 283, 202 So.2d 55 (1967); Sovereign Camp,W.O.W. v. Screws, 218 Ala. 599, 119 So. 644 (1928); Nashville,Chattanooga St. Louis Ry. v. Parker Co., 123 Ala. 683,27 So. 323 (1898), overruled, Rasco v. Jefferson, 142 Ala. 705,38 So. 246 (1905); and Acklen's Executor v. Hickman, 63 Ala. 494, 35 Am.Rep. 54 (1879). We disagree. The exclusion of the report did not prejudice the Partridges in any way. Officer Coker testified at length from the report concerning all of the details contained in the report. He did not witness the accident, and he arrived after the vehicles had been moved. He recorded in the report what he had been told. The drawing included in the report was based on what he had been told, not on his personal investigation. The trial court did not err in excluding the report, and the Partridges' motion for a new trial on this ground was properly denied. Dunaway v. King,510 So.2d 543 (Ala. 1987).
"Did the court err in preventing [the Partridges] from showing statements made by [Mr. Partridge] to representatives of [Miller's] insurance company and the conduct of the insurance company's representatives, where [Miller] was alleging malingering and failure to mitigate [damages] on the part of [Mr. Partridge]?"
As part of his case, Miller introduced into evidence certain answers by the Partridges to interrogatories. The Partridges then wanted to read into evidence something referred to in their interrogatory *Page 589 
answers as "Exhibit A." "Exhibit A" is apparently an exhibit that the Partridges attached to their answers and which contained certain statements or complaints that had been made by Mr. Partridge concerning his injuries and which also included references to insurance companies. Miller agreed to allow the Partridges to read "Exhibit A" into evidence if all references to insurance were eliminated. The trial court ruled that it would allow the Partridges to read "Exhibit A" into evidence if the Partridges left out everything "dealing with insurance." To this ruling by the trial court, the Partridges responded: "All right." The Partridges failed to make any offer of proof as to the matters dealing with insurance that were omitted from the exhibit. It appears from the record that the Partridges read "Exhibit A" into evidence without interruption, and without the references to insurance. The Partridges now argue that the trial court somehow committed reversible error in excluding the references to insurance that were contained in "Exhibit A." The record demonstrates, however, that the Partridges actually agreed with or consented to the trial court's ruling with regard to the offered evidence. Furthermore, because they did not make an offer of proof, this Court cannot decide whether the evidence offered by the Partridges should have been admitted under an exception to the normal rule precluding the admission of evidence concerning insurance. Davis v. Davis, 474 So.2d 654 (Ala. 1985). It is the general rule in Alabama that it is prejudicial and reversible error to allow testimony that shows or tends to show that a party is indemnified in any degree or fashion by an insurance company. Robins Engineering, Inc. v. Cockrell, 354 So.2d 1
(Ala. 1978). The trial court did not err in denying the Partridges' motion for a new trial on this issue.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Partridge testified, in pertinent part, as follows:
"Q. Okay. Do you think he saw you before the impact; is there any reason that you would think that he saw you?
"A. I don't recall anything that would indicate he saw me.
"Q. Did he —
"A. He was going so slowly that I assumed that he didn't see me. I thought he would speed up and the — that's — that flashed through my mind just a dozen times. I wondered why he didn't speed up to get out of the way. Because he should have seen me and should have been speeding up to get out of the way. And I'd say three to five miles an hour was the speed he was making across in front of me.
"Q. So the best you can determine, he didn't see you before the accident?
"A. The best I can determine, he didn't. And I don't recall any statement he made saying he did.
". . . .
"Q. Do you think Mr. Miller . . . intentionally turned in front of you?
"A. No.
"Q. Okay.
"A. I don't [think] the man has a mean bone in his body."
[2] Mr. Partridge testified, in pertinent part, as follows:
"Q. And he was turning into what?
"A. He said he thought he was going into Dexter Avenue, but he was actually turning into the service station.
"Q. What makes you think that?
"A. Well, he said that his brother told him when he turned off of Lafayette, his brother told him he'd better not drive on Government Street, it was too confusing and get off of Government. And he said that's what he was trying to do.
"Q. Who told you that?
"A. Mr. Miller told me that. Ernest B.
"Q. Ernest Miller? Okay. Ernest told you that his brother said that?
"A. That his brother told him it was too confusing on Government Street at five o'clock in the afternoon, he better get off. Not those exact words, but that's the thought they conveyed. I don't think they said anything about five o'clock traffic, but that's — that was the way I perceived their meaning."