The complaint in this case arose from an altercation between Scott Allen Baker and Derek Montgomery Anlage, a member of the Gamma Phi chapter of Pi Kappa Phi social fraternity, an unincorporated association. Baker sued Anlage and Pi Kappa Phi, alleging assault and battery, negligence, wantonness, and a violation of Ala. Code 1975, § 6-5-71 (the Dram Shop Act), and seeking both compensatory and punitive damages. The trial court entered a summary judgment for Pi Kappa Phi and made that judgment final pursuant to Rule 54(b), A.R.Civ.P.[1] Baker appealed. The record contains no substantial evidence of a Dram Shop Act violation by Pi Kappa Phi, and the summary judgment is affirmed as to that claim. However, we reverse and remand as to the assault and battery, negligence, and wantonness claims.
In the early morning hours of January 27, 1992, a confrontation occurred between Baker and Anlage as Anlage was assisting in "closing down" a party at the Pi Kappa Phi fraternity house, located next to the campus of the University of South Alabama. Anlage was an active member of Pi Kappa Phi and Baker was a visitor at the party. The evidence is conflicting as to exactly what sparked the confrontation; however, it appears that the trouble began when Baker, his girlfriend, and another friend began to question the bartender as to what had happened to a number of cans of beer that Baker had brought to the party. This dispute eventually led to Baker's encounter with Anlage. Baker came away from the encounter with a broken jaw and nerve damage to his face.
Baker argues that he presented sufficient evidence to create a fact question as to whether Anlage was acting as an agent of Pi Kappa Phi at the time of the alleged assault and as to whether Pi Kappa Phi had encouraged or authorized Anlage to use physical force against him. Relying onRothman v. Gamma Alpha Chapter of Pi Kappa Alpha Fraternity,599 So.2d 9 (Ala. 1992), Pi Kappa Phi takes the contrary position — that there was insufficient evidence to show that Anlage was acting on its behalf at the time of the altercation or that it had encouraged or authorized Anlage to use any kind of physical force against Baker. Thus, the issue presented on this appeal is whether the evidence was sufficient to allow a jury to decide whether Anlage was acting as an agent of Pi Kappa Phi at the time of the incident and was acting with authorization from the fraternity *Page 425 
to use physical force to remove Baker from the party.
The summary judgment was proper in this case if there was no genuine issue of material fact and Pi Kappa Phi was entitled to a judgment as a matter of law. Rule 56, Ala.P.Civ.P. The burden was on Pi Kappa Phi to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to Baker to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against him. In determining whether there was a genuine issue of material fact, we must view the evidence in the light most favorable to Baker and must resolve all reasonable doubts against Pi Kappa Phi. Knight v. Alabama Power Co., 580 So.2d 576 (Ala. 1991). Because this case was not pending on June 11, 1987, the applicable standard for reviewing Baker's claim for compensatory damages is the "substantial evidence" rule. Ala. Code 1975, § 12-21-12. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). The applicable standard for reviewing Baker's claim for punitive damages is, however, governed by the "clear and convincing evidence" standard. Ala. Code 1975, § 6-11-20; see Senn v. Alabama Gas Corp.,619 So.2d 1320 (Ala. 1993), Berry v. Fife, 590 So.2d 884 (Ala. 1991). "Clear and convincing evidence" is defined in §6-11-20(b)(4) as follows:
 "Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
As both parties acknowledge, an unincorporated association, such as Pi Kappa Phi, may be liable in tort for the wrongful acts of its members when acting collectively in the prosecution of the business for which it is organized, and it is responsible for the torts of its members or employees when it has encouraged or authorized them. However, in the absence of authorization or ratification by its members, an association like Pi Kappa Phi is not liable for the intentional torts of its members. Rothman, supra.
After carefully examining the applicable portions of the record, and viewing the evidence in the light most favorable to Baker, we conclude that there was sufficient evidence from which a jury could find that Anlage was acting as an agent of Pi Kappa Phi at the time of the alleged assault and that Anlage's use of physical force was not outside the scope of his duties as a member of Pi Kappa Phi. The evidence shows that Anlage was physically the largest and most intimidating member of the Gamma Phi chapter of Pi Kappa Phi. He had been in one fistfight over a disputed trespass on the fraternity's property before the altercation made the basis of this suit. Jerry Lee, the fraternity's vice president, was aware of that fight, in which Anlage had "decked" the individual, disabling him with a single blow. Anlage had a reputation among the fraternity's members as being someone who should not be "messed with." Carl Bronold, the social chairman of Pi Kappa Phi at the time of the incident, testified as follows:
 "Q. And when he [Anlage] is informing people of the hours of the party and carrying about his duties as requested by yourself as social chairman . . .
"A. Right.
"Q. . . . and Mr. Lee as vice president . . .
"A. Right.
 "Q. . . . he is doing so as a representative of the fraternity?
"A. Yes."
Jerry Lee testified:
 "Q. Did you feel that when you called [Anlage] over that evening that the problem [the dispute between Baker and his *Page 426 
friends and the bartender] was about to get out of hand?
"A. Yes.
 "Q. And so you testified that you told [Anlage] that the party of three [Baker and his two friends] needed to be escorted out, that you were just turning the problem over to [Anlage]?
"A. I was asking for [Anlage's] assistance."
The evidence indicated that in a related criminal proceeding that arose out of this incident Lee had referred to Anlage as a "bouncer figure." He testified in this case as follows:
 "A. Well, the term 'bouncer figure' and [that's] always been his [Anlage's] job, it just seems as though [Anlage's] being the largest or one of the largest guys in the fraternity, he's going to protect his brother and he's going to protect me. And so I feel like that if I have a problem, then I can go to [Anlage] and [he] is going to help me . . .
"Q. Okay.
"A. . . . solve the problem.
 "Q. And you told [Anlage] to escort [Baker and his friends] out?
"A. Yes.
 "Q. Because of his large physical size and his other attributes that you just described?
"A. Yes."
The evidence, when viewed favorably toward Baker, was sufficient under both the "substantial evidence" and the "clear and convincing evidence" standards of review to allow a jury to determine whether the ranking members of Pi Kappa Phi used Anlage as a means of "crowd control" during parties and whether they expected him to use physical force to accomplish his job. We are not persuaded by Pi Kappa Phi's argument that Anlage ceased representing the fraternity the moment before his fist struck Baker's face.[2] The evidence shows that the ranking members of Pi Kappa Phi were clearly aware of Anlage's ability to intimidate others and of his willingness to settle disputes with his fists. This knowledge on the fraternity's part, when viewed in light of the role that Anlage was assigned at fraternity parties, creates a strong inference that it was foreseeable to Pi Kappa Phi that Anlage would back his words up with physical action and that that action was at least impliedly authorized by the fraternity. "For they have sown the wind, and they shall reap the whirlwind."[3]
We note that Rothman is factually distinguishable from the present case. In Rothman, the plaintiff was injured when a fight broke out between his fraternity and another fraternity. There was no evidence in that case to show that the defendant fraternity had encouraged or authorized the actions of its members that resulted in injury to the plaintiff.
The judgment is affirmed as to the claim alleging a violation of the Dram Shop Act. The judgment is reversed as to the assault and battery, negligence, and wantonness claims, and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Baker later dismissed his claims against Anlage with prejudice.
[2] Carl Bronold testified:
 "Q. When [Anlage] got into the altercation, was he doing that as a representative of the fraternity?
". . . .
"A. No.
". . . .
 "Q. So he was acting on behalf of the fraternity up to the point . . .
"A. Up until the point of physical contact."
[3] Hosea 8:7 (King James). *Page 427