The primary issue presented in this appeal is whether the admission of the defendant Pi Kappa Phi's "Fraternity Insurance Purchasing Group Risk Management Manual" and references to it were probative and relevant, or whether they improperly interjected the fact that the fraternity had liability insurance so that a reversal of the judgment is warranted. We apply the general rule of evidence that in an action based on injury to a person or damage to property, proof may not be made that the defendant was insured against liability. *Page 746 
The plaintiff, Scott Allen Baker, had been invited by the fraternity president to attend a party at the house of the Gamma Phi chapter of Pi Kappa Phi fraternity at the University of South Alabama and to bring his friends. Baker, along with two of his friends, Sarjou Patel and Jason Rumsey, attended the party and brought a cooler in which they had beer and wine coolers. Pi Kappa Phi had a system that allowed members and guests to bring alcoholic beverages to a party, but members and guests were requested to follow standard procedures and to give their alcoholic beverages to two fraternity members, who were seated at a table and who would give the members or guests a card indicating what beverages had been left with them. In order to retrieve their drinks, members and guests could go to the table, ask for a drink from their supply, and have their ticket stamped to indicate the amount that had been taken.
At the close of the party, Baker and Rumsey went to get their cooler containing the remaining beverages they had not consumed. There was a disagreement between Baker and his friends and the fraternity members about the amount of alcohol that remained. A confrontation ensued, and in that confrontation Derek Anlage, a Pi Kappa Phi member, broke Baker's jaw.
Baker sued the fraternity and Anlage, alleging two counts of assault against Anlage, as an active member of Pi Kappa Phi fraternity; two counts against Pi Kappa Phi fraternity, alleging that it had negligently or wantonly maintained its premises, and had negligently or wantonly supervised its members and/or guests; and a fifth count alleging violation of the Dram Shop Act. The trial court granted Pi Kappa Phi's motion for summary judgment as to the entire complaint, but this Court reversed the summary judgment as to the assault, negligence, and wantonness counts. Baker v. Pi Kappa PhiFraternity, 628 So.2d 423 (Ala. 1993).
Anlage subsequently settled with Baker for $35,000 and was dismissed, with prejudice. The remaining charges proceeded to trial against Pi Kappa Phi. Before the trial, the court denied Pi Kappa Phi's motion in limine to prohibit the admission of evidence regarding Anlage's underage drinking and Pi Kappa Phi's rules concerning drinking. The case went to trial before a jury, and was basically tried on Baker's negligence and wantonness claims. One of the central issues raised during the trial was whether Derek Anlage was acting as an agent for the fraternity when he assaulted Baker. The jury awarded Baker $100,000 in compensatory damages and $500,000 in punitive damages.
Pi Kappa Phi appeals, raising four issues: 1) whether liability insurance was improperly interjected throughout the trial and, if so, whether that interjection of insurance warrants reversal; 2) whether the trial court erred in allowing evidence to be admitted relating to underage drinking, given that the trial court had entered a summary judgment for Pi Kappa Phi on the Dram Shop claim and this Court had affirmed that summary judgment; 3) whether there was jury misconduct that warrants reversal; and 4) whether the trial court's failure to conduct a Hammond-Green Oil[1] hearing or to make any findings as to the correctness of the award of punitive damages was reversible error.
Baker presented evidence concerning fraternity rules, state and local law, and the school's policy on drinking, claiming that it was probative on his allegations of negligence and wantonness. Baker argued that in order for the jury to find Pi Kappa Phi liable, the jury had to find that Anlage, as an agent of Pi Kappa Phi, assaulted him and that Pi Kappa Phi either authorized, ratified, or otherwise acceded to Anlage's actions. Baker argued at trial, and has agreed here on appeal, that, in order to find Pi Kappa Phi liable for its own negligence and failure to maintain its premises or to supervise its members, he had to prove the existence of a duty to him, a breach of that duty, and injury proximately caused by that breach.
The question of the admissibility of the "Fraternity Insurance Purchasing Group *Page 747 
Risk Management Manual" (FIPG manual) came up during the testimony of Tom Peterson, local advisor for Gamma Phi chapter of Pi Kappa Phi. During his testimony, the following colloquy transpired between Baker's attorney and the witness:
 "Q. Let me ask you to take the manual that I place in front of you and go to the page that says introduction 1, I've got a clip on it in fact, if you go to the clip.
"A. Okay.
"Q. See it?
"A. Yes.
 "Q. All right. And the middle paragraph that I have clipped, tell me if I'm reading this right. 'Yet, the 1980s saw a rapid increase in the number of lawsuits filed in our nation's courts. The volume of insurance claims and lawsuits resulting from the activities of college-aged men show that the Greek system faced even greater risks and dangers. In fact, in the late 1980s, fraternities and sororities were ranked by the National Association of Insurance Commissioners as the sixth worst risk for insurance companies just behind hazardous waste disposal companies and asbestos contracts.' Did I read that right?"
(R.T. 314-15.) Shortly after this line of questioning, Pi Kappa Phi's attorney requested a bench conference, Baker's attorney proceeded with the next question, and made another reference to liability insurance:
 "Q. 'Prior to the formation of this group, most Greeks believed that protection against risk and damage was a simple process: just get liability insurance. Yet, as insurance companies became reluctant to provide coverage to Greeks, a new way of looking at insurance was needed. This required two things: one, the best insurance coverage available, two, a comprehensive risk management plan' Did I read that right?"
(R.T. 316.) Pi Kappa Phi also argues that Baker's attorney made another reference to insurance in his closing argument, when he said:
 "Mr. Durward Owen [the fraternity's executive director] in North Carolina, who is a paid member of this corporation, sets up an insurance program to help manage risk for his fraternity and other fraternities."
(R.T. 367.) Pi Kappa Phi's attorney objected to the reference, and the court overruled. Pi Kappa Phi argues that the judge's overruling of its objections is clearly erroneous and constitutes prejudicial error, especially in light of the argument made by the plaintiff's counsel, which it says was prejudicial. Pi Kappa Phi argues that Baker's statements to the jury were clearly an attempt to interject into the jury's mind the fact that liability insurance coverage was available to defendant Pi Kappa Phi.
Baker, on the other hand, argues that he was an invitee at the fraternity house and that in order to prove his allegations against Pi Kappa Phi he had to show that the fraternity owed him a duty not to negligently or wantonly injure him; that the fraternity breached that duty; and that as a proximate result of that breach he was injured. An obvious part of Baker's theory of his case was that the consumption of alcohol by Derek Anlage, an underage fraternity member, in gross disregard and overt contravention of the laws of Alabama and of the fraternity's own constitution and by-laws and its risk management policy, led to the assault by Anlage.
Baker argues that his counsel offered or referred to the FIPG manual not for the purpose of demonstrating that Pi Kappa Phi was insured against liability, but to show that the fraternity had strict rules and regulations governing the drinking of alcohol by underage persons and "for establishing a duty and the standard of care on the part of Pi Kappa Phi to Baker under the facts of the instant case," and he argues that "[t]he reference to insurance was minor and inconsequential but, even so, was so interwoven with the otherwise admissible manual that it cannot constitute error, let alone, prejudicial, reversible error."
Pi Kappa Phi relies on Partridge v. Miller, 553 So.2d 585,589 (Ala. 1989), which states: *Page 748 
 "It is the general rule in Alabama that it is prejudicial and reversible error to allow testimony that shows or tends to show that a party is indemnified in any degree or fashion by an insurance company."
This Court stated in Prescott v. Martin, 331 So.2d 240, 246
(Ala. 1976):
 "There is no question . . . that the issue of a defendant's insurance against liability is a forbidden fact in the trial of a case, unless an exception permits its introduction. See generally Comment, EVIDENCE: REVEALING THE EXISTENCE OF DEFENDANT'S LIABILITY INSURANCE TO THE JURY, 6 Cumb.L.Rev. 123 (1975)."
This Court has long recognized that "[i]n an action for injury to person or property, proof generally may not be made, as tending to show negligence or wantonness, that the defendant was insured against liability." C. Gamble, McElroy's AlabamaEvidence, § 189.04(1) (4th ed. 1991); Cook v. Anderson,512 So.2d 1310 (Ala. 1987); Robins Engineering, Inc. v. Cockrell,354 So.2d 1 (Ala. 1977). Indirect references do not escape the prohibition of this evidentiary rule. See Thorne v. Parrish,265 Ala. 193, 90 So.2d 781 (1956).
Baker is aware of the general rule of law stated in those cases, but he says that the references to insurance in those cases were "both overt and . . . obvious" and were made for the sole purpose of demonstrating to the jury that a contractual agreement existed to indemnify the named defendants in the event a verdict was rendered against them. Baker, although admitting that evidence that the defendant has insurance is not admissible, nevertheless argues that he comes within the following exception stated by Professor Gamble:
 "Testimony is sometimes admitted, despite the fact that it reveals liability insurance coverage of the defendant, when it is interwoven with other perfectly admissible testimony. . . . This is simply the application of the principle of inseparable evidence as was discussed earlier in this treatise."
C. Gamble, McElroy's Alabama Evidence, § 189.04(3) (4th ed. 1991).
Baker, citing McElroy's, § 12.02 (4th ed. 1991), argues that the reference to insurance was interwoven with other admissible evidence and that Pi Kappa Phi's remedy, therefore, was to request the trial court to instruct the jury not to consider the evidence with respect to nonpermissible inferences.
We do not agree with Baker's contention that the references to insurance were so interwoven with other admissible evidence in the FIPG manual that they were admissible. A review of the record convinces us that Baker had sufficient evidence in the manual to assist him in establishing the rules and regulations of the fraternity without specifically referring to the sections referred to in the quotations set out above. The references in these sections that we have quoted were not minor and inconsequential, nor were they interwoven with other admissible testimony to the extent that they could not be separated. McElroy's, § 12.02.
Based on the foregoing, we cannot agree with Baker that his attorney's references to liability insurance were admissible and nonprejudicial. We conclude that they were inadmissible and prejudicial, and that they require a reversal of the judgment in this case. Because we reach this result, we pretermit discussion of the other issues raised by Pi Kappa Phi.
REVERSED AND REMANDED.
SHORES, HOUSTON, and INGRAM, JJ., concur.
COOK, J., concurs in the result.
[1] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986); GreenOil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989). *Page 749