Raymond MACHESNEY, Plaintiff,

v.

LARRY BRUNI, M.D., P.C., Larry Bruni, M.D., Providence Hospital, Inc., and Kenneth L. McCoy & Associates, Defendants.

Civ. A. No. 93–1477.

United States District Court, District of Columbia.

Nov. 15, 1995.

David James Curtin, Anthony W. Verran, Schwalb, Donnenfeld, Bray & Silbert, P.C., Washington, DC, for plaintiff.

Marc E. Albert, Tyler, Bartl, Burke & Albert, Alexandria, VA, Daniel William Cotter, Fairfax, VA, Steven John Anderson, Office of Corporation Counsel, D.C., Washington, DC, for Larry M. Bruni.

Hugh Welsh Farrell, James S. Livio, Hugh W. Farrell & Associates, Columbia, MD, Steven John Anderson, Office of Corporation Counsel, D.C., Washington, DC, for Providence Hospital.

Daniel William Cotter, Fairfax, VA, for Larry M. Bruni, M.D., P.C.

Karen E. Evans, Carr, Goodson & Lee, Washington, DC, for K.L. McCoy & Associates.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on the following post-trial motions: 1) Defendant K.L. McCoy, M.D. & Associates, P.C.'s ("McCoy") motion for judgment as a matter of law; 2) Defendants Larry M. Bruni, M.D. and Larry M. Bruni, M.D., P.C.'s (collectively referred to as "Bruni") motion for judgment as a matter of law; 3) Defendant Bruni's renewed motion for a mistrial; 4) Defendant McCoy's motion for a new trial; 5) Defendant Bruni's motion for a new trial, or in the alternative, remittitur; 6) Defendant McCoy's motion for remittitur; 7) Defendant McCoy's motion to dismiss Bruni's cross-claim, or in the alternative, motion for summary judgment on Bruni's cross-claim; 8) Defendant Bruni's motion for implied or equitable indemnification from McCoy, or in the alternative, for apportionment of damages; and 9) Defendant McCoy's motion for indemnity, or in the alternative, for apportionment of damages; 10) Plaintiff Raymond Machesney's ("Machesney") motion for approval of bill of costs; and 11) Defendant Providence Hospital's motion for approval of bill of costs. The Court will address each motion in turn.

## BACKGROUND

Plaintiff Raymond Machesney filed this medical malpractice action seeking damages against four defendants. The case went to trial against all four defendants on June 6, 1995. During the course of the trial, Plaintiff set forth evidence that the Defendants Providence Hospital and K.L. McCoy, M.D. and Associates negligently reported HIV tests to the Plaintiff in October and November of 1985 indicating that the Plaintiff was HIV positive, when he was not. The remaining defendants were Dr. Larry M. Bruni, M.D. and his professional corporation. Plaintiff provided evidence that Dr. Bruni negligently treated Plaintiff for the HIV virus for a five year period from April 1987 through May 1992, when another physician discovered that Plaintiff was not HIV positive.

The case was sent to the jury for deliberations on June 21, 1995. On that same day, the jury returned a verdict for Plaintiff against Defendants Bruni and McCoy in the amount of $4.1 million. Defendant Providence Hospital was absolved of all liability by the jury. Judgment was entered in favor of Plaintiff against Defendants Bruni and McCoy on June 28, 1995. These motions followed.

## MOTIONS FOR JUDGMENT AS A MATTER OF LAW BY McCOY AND BRUNI

*Judgment As a Matter of Law Standards* [1]

■ Judgment as a matter of law is only proper for the defendant where the Court finds, after viewing all the evidence in the light most favorable to the Plaintiff and after giving the Plaintiff the benefit of every reasonable inference, that no reasonable jury could have found in favor of the Plaintiff. *Richardson by Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 827 (D.C.Cir. 1988), *cert. denied,* 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989); *Morgan v. District of Columbia,* 824 F.2d 1049, 1056 (D.C.Cir.1987). If reasonable people could differ as to the conclusion or there is substantial conflicting evidence, then a defendant's motion for judgment as a matter of law must be denied. *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.

---

**1.** A motion for judgment not withstanding the verdict (n.o.v.) is now referred to under Rule 50 of the Federal Rules of Civil Procedure as a motion for judgment as a matter of law.

1984). When considering the evidence, the Court should not assess the credibility of the witnesses or weigh the evidence. *Richardson*, 857 F.2d at 827. The Court's function is limited to "verifying 'only that fair-minded jurors could reach the verdict rendered.'" *Morgan*, 824 F.2d at 1056, citing *Grogan v. General Maintenance Service Co.*, 763 F.2d 444, 447 (D.C.Cir.1985).

*Analysis with respect to McCoy*

Defendant McCoy contends that it is entitled to judgment as a matter of law because the Plaintiff failed to produce any evidence of negligence and failed to produce expert testimony on the standard of care, on the breach of the standard of care and on causation.

Plaintiff sets forth several theories of liability with respect to Defendant McCoy: 1) that McCoy failed to perform HIV tests on Plaintiff's blood samples; 2) that McCoy failed to accurately perform and accurately report Plaintiff's HIV blood tests; and 3) that McCoy failed to adequately supervise the handling, processing, testing, and reporting of Plaintiff's HIV blood tests. If the Plaintiff presented sufficient evidence with respect to only one of these theories which would enable a reasonable jury to find in his favor, then judgment as a matter of law for Defendant McCoy must be denied.

Plaintiff provided sufficient evidence to establish the standard of care owed by Defendant McCoy, its breach by Defendant McCoy and the resulting injury to Plaintiff. There is no dispute that McCoy consisted of a group of pathologists that supervised the operation of the laboratory at Providence Hospital in October and November of 1985, the time during which Plaintiff and Dr. Harris contend Plaintiff's blood was tested at Providence Hospital.

Plaintiff submitted evidence that his blood was received by Providence Hospital for testing two times. According to Dr. Harris, the first blood sample was taken in his office in October of 1985 and sent to the lab at Providence for analysis. The second blood sample, according to Plaintiff's testimony, was taken at Providence in November of 1985. Dr. Harris testified that the reports generated from the lab with respect to both blood samples indicated that Plaintiff was HIV positive. Plaintiff also provided evidence through the testimony of Dr. Blick that he has never been HIV positive.

Dr. Brancaccio, a McCoy official, conceded in his testimony that a laboratory has a duty to provide accurate testing of blood. Such a duty requires that the blood actually be tested under the supervision of the testing laboratory.[2]

■ Under Plaintiff's first theory—that McCoy failed to perform the tests—Plaintiff sustained his burden. No actual records of the blood tests are available.[3] McCoy took the position that in 1985 it was not performing HIV blood testing and that it sent blood to be tested for the HIV virus to various reference labs—Mayo Medical Laboratories ("Mayo"), D.C. Public Health Service Lab and American Medical Laboratory ("American"). Representatives from both Mayo and American testified that their records from 1985 did not disclose any tests of Plaintiff's blood. A chief at the D.C. Public Health Service Lab testified that his lab was not doing testing for the HIV virus in 1985. Based on this evidence, a jury was entitled to find that the tests were not performed by McCoy.[4]

Plaintiff's evidence that McCoy reported that Plaintiff was HIV positive, when in fact he was not, certainly supports the element of causation. Based on the 1985 test results, Plaintiff believed that he had the deadly HIV virus for over 7 years.

In an effort to defeat Plaintiff's verdict, Defendant McCoy further contends that the

---

**2.** As to the standard of care, Dr. Resnick also testified that in October and November of 1985, the standard of care required that an ELISA test followed by a Western Blot test be performed before a patient could be reported HIV positive.

**3.** Dr. Harris, Providence and McCoy had destroyed their records.

**4.** Even if the tests were performed, Dr. Resnick testified that two false positive test results would be the result of human error over 99% of the time. In other words, two false positive test results would only not be the result of human error in less than 1% of the cases.

verdicts rendered by the jury as between McCoy and Providence Hospital are inconsistent. McCoy argues that with joint ventures, the negligence of one member is imputed to the others and that the verdicts must be the same as to both. Accordingly, McCoy suggests that if the jury found in favor of Providence whose employees worked in the lab, then the jury should have found in favor of McCoy.

Assuming that the verdicts are inconsistent, it would be inappropriate for the Court to grant Defendant McCoy judgment as a matter of law under the circumstances of this case.[5] For the reasons stated above, the Court has found that Plaintiff provided sufficient evidence to warrant a verdict against McCoy. It would be patently unfair for the Court to credit the jury's verdict in favor of Providence as the "correct verdict" and allow Providence's verdict to inure to the benefit of Defendant McCoy as against the Plaintiff. Plaintiff presented more than enough evidence to withstand judgment as a matter of law.

Accordingly, the Court denies Defendant McCoy's motion for judgment as a matter of law.

*Analysis with respect to Bruni*

■ Defendant Bruni contends that judgment should be entered for him as a matter of law because Plaintiff failed to establish a *prima facie* case on the issue of causation. Specifically, Defendant contends that no reasonable jury could have reached a verdict in favor of the Plaintiff on the issue of whether Plaintiff's alleged damage was caused by Dr. Bruni's failure to obtain Plaintiff's tests or failure to retest Plaintiff.

Plaintiff proceeded against Dr. Bruni on several theories of liability: 1) failure to retest the Plaintiff for HIV before treating him; 2) failure to obtain the Plaintiff's medical records; 3) failure to follow the appropriate standard of care in prescribing numerous drugs and medications; and 4) failure to retest the Plaintiff at such time as the standard of care would require. If a reasonable jury could have found for the Plaintiff against Dr. Bruni on any of these theories, then the verdict must stand.

Plaintiff's experts (Dr. Blick, Dr. Mundey) testified that before Dr. Bruni began treating Plaintiff he had an obligation to retest Plaintiff or obtain his test results from Plaintiff's prior doctor, Dr. Harris.[6] Once Dr. Bruni chose not to obtain the test records,[7] he was then obligated to retest Plaintiff. Plaintiff presented ample evidence which would indicate that if such testing had been done Plaintiff would have tested HIV negative. Plaintiff established through the testimony of Dr. Blick and Dr. Saah that Defendant Bruni's theory of "seroreversion" (the change in a patient's status from HIV positive to HIV negative) was highly unlikely.

Plaintiff also presented evidence through the testimony of Dr. Blick that Plaintiff's high T–Cell count during Dr. Bruni's treatment raised a red flag that Plaintiff may not have the virus and gave rise to a separate duty to retest Plaintiff after treatment had begun. Again, Plaintiff supported the theory that such a retesting would have indicated that Plaintiff was HIV negative.

As to Dr. Bruni's failure to follow the appropriate standard of care in prescribing numerous drugs and medications, Plaintiff presented sufficient evidence through Dr. Blick and Dr. Mundey to support this theory of liability. The jury was entitled to determine on the basis of expert testimony that the highly aggressive treatment by Dr. Bruni was outside the standard of care given Plaintiff's stabilized medical condition (e.g. his consistently high T–Cell count).

Defendant Bruni also suggests that Plaintiff failed to present legally sufficient evidence that Dr. Bruni caused any of Plaintiff's damages because Plaintiff's alleged mental

---

**5.** Defendant McCoy also asserts that the "inconsistent verdicts" are grounds for a new trial. The Court will address this argument in its analysis of Defendant McCoy's motion for a new trial.

**6.** The parties agree that the test results conducted at Dr. Harris' direction indicated that Plaintiff

was HIV positive. This fact raises problems with the causation element of one of Plaintiff's theories of liability—Dr. Bruni's failure to obtain the test results.

**7.** There is no dispute that Dr. Bruni did not obtain the test results.

suffering was more likely than not caused by other "stressors" and by Plaintiff's initial HIV diagnosis. As to mental suffering, Plaintiff presented sufficient evidence through his own testimony and that of Dr. Greenberg to establish that Dr. Bruni was a contributing cause of his damages. Certainly, the jury could have found that Plaintiff's belief that he was HIV positive through 1992 and Dr. Bruni's continued aggressive treatment of Plaintiff for 5 years caused Plaintiff emotional trauma.

After viewing all the evidence in the light most favorable to the Plaintiff and after giving Plaintiff the benefit of every reasonable inference, the Court finds that a reasonable jury could have found in favor of the Plaintiff against Defendant Bruni. Accordingly, the Defendant Bruni's motion for judgment as a matter of law is denied.

## BRUNI'S RENEWED MOTION FOR MISTRIAL

### Mistrial Standards

The granting of a mistrial is an extreme measure and should be reserved for those circumstances where the prejudicial effect of an event during the trial cannot be cured. It is within the trial court's sound discretion to determine whether or not to grant a mistrial since the trial court "is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *Benford v. Richards Medical Co.*, 792 F.2d 1537, 1541 (11th Cir.1986).

### Analysis

This matter comes before the Court on a renewed motion for a mistrial by Defendant Bruni.[8] During the opening statement, Plaintiff's counsel mentioned that Plaintiff sought $10 million in damages. Defendant Providence Hospital moved for a mistrial, which the other Defendants joined. After Plaintiff's opening argument, the Court gave the jury a curative instruction that it should strike the amount of damages mentioned by Plaintiff's counsel from its consideration. After the conclusion of the opening statements by all the parties, the Court adjourned the trial for the day and requested further briefing from the parties regarding whether a mistrial should be declared on the basis of Plaintiff's opening statement.[9]

When the proceedings commenced the next day, Defendants Bruni and Providence withdrew their motions for a mistrial. Only Defendant McCoy reserved its rights with respect to the motion.

The Court's research disclosed that under D.C. law it was not improper to mention the amount of damages sought to the jury.[10] In the exercise of its sound discretion, the Court determined that granting a mistrial was not warranted and found that the instruction given by the Court was sufficient to cure any prejudice that may have arisen due to the counsel's reference to the amount of damages during his opening statement.

Counsel for Defendant Bruni wants the Court to readdress the issue at this time. He states that based on his discussion with the jury foreperson after the verdict was rendered that the jury members were not able to erase the $10 million figure from their minds. Defendant Bruni's withdrawal of his motion for a mistrial constitutes a waiver and Defendant cannot now pursue this issue.[11]

---

**8.** Defendant Bruni has labelled his motion as one for a mistrial. However, a motion for a mistrial is properly made during the course of a trial. If the Court were to grant Defendant's motion, a new trial would be ordered. As such, the Court will deem his motion to be one for a new trial. In fact, one of the grounds asserted in his motion for a new trial is the argument that he makes in his motion for a mistrial.

**9.** Neither Defendant Bruni nor Defendant McCoy submitted any briefs to the Court.

**10.** See June 13, 1995 Order.

**11.** As noted *supra*, n. 6, Defendant Bruni moves for a new trial on the same grounds—that the curative instruction was ineffective. The Court has treated Defendant's motion for a mistrial as a motion for a new trial. Accordingly, Defendant Bruni has waived this argument as a ground for new trial.

The Court will, however, address the issue of the prejudicial effect of the statement by Plaintiff's counsel in its consideration of Defendant McCoy's motion for a new trial. Defendant McCoy, which did not withdraw its motion for a mistrial, raises the same argument that the prejudicial effect of the statement was not cured. The

**1130**

Accordingly, Defendant Bruni's "renewed motion for a mistrial" is denied.

## McCOY'S AND BRUNI'S MOTIONS FOR NEW TRIAL

*New Trial Standards*

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Motions for a new trial are addressed to the sound discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Rule 59 recognizes that it is the duty of the trial judge to set aside a verdict and grant a new trial where the verdict does not comport with the interests of justice. *Klein v. Auto Owners Ins. Co.*, 39 F.R.D. 24 (D.Minn.1965).

In ruling on a motion for a new trial, the trial judge has a greater degree of discretion than when ruling on a motion for a judgment as a matter of law. *Crown Central Petroleum Corp. v. Brice*, 427 F.Supp. 638 (E.D.Va.1977). Even if the evidence in support of the verdict is substantial, the trial judge may order a new trial if the verdict is against the clear weight of the evidence, if the damages awarded are excessive, or substantial errors occurred during the proceedings. *Starlings v. Ski Roundtop*, 493 F.Supp. 507 (M.D.Pa.1980); *Baber v. Buckley*, 322 A.2d 265, 266 (D.C.App.1974) (new trials may be ordered where "there has been a legal error in the proceeding, the damages are excessive, the trial court was unfair, or the verdict was contrary to the weight of the evidence.").

The trial court, however, is not supposed to supplant the jury's view with that of its own and order a new trial simply because the court would have weighed the evidence differently from the jury. Rather the court's discretion to order a new trial is limited to

those situations where the verdict represents a miscarriage of justice. *Frank v. Atlantic Greyhound Corp.*, 172 F.Supp. 190, 191 (D.D.C.1959) (standard for determining whether verdict is excessive is whether it is so high that it represents a miscarriage of justice); *Abrams v. Lightolier, Inc.*, 841 F.Supp. 584 (D.N.J.1994), *aff'd in part, vacated in part on other grounds, remanded on other grounds*, 50 F.3d 1204 (3rd Cir.1995).

*Analysis*

Both Defendant McCoy and Defendant Bruni set forth a multitude of grounds for a new trial, none of which this Court finds to have merit. The old carnival game of "pitch 'til you win" appears to be the strategy followed by both defendants. Defendants contend that the verdict is against the clear weight of the evidence, that the damages awarded are excessive and that substantial procedural errors occurred during the course of the trial. Defendants also seek to impeach the jury's verdict based on their discussion with the jury foreperson after the verdict was rendered. The various grounds will be discussed in turn.

*Weight of the Evidence*

The verdict in this case was the result of careful consideration by a nine-person jury who paid close attention to the testimony during a two and one-half week trial. "In this jurisdiction particularly, District Court judges have given great weight to jury verdicts." *Finkelstein v. District of Columbia*, 593 A.2d 591, 595 (D.C.App.1991) (citing *Taylor v. Washington Terminal Co.*, 409 F.2d 145, 148–149 (D.C.Cir.), *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969)).

The weight of the evidence supports the jury's verdict against both McCoy and Bruni. In ruling on a motion for a new trial, the Court is not supposed to supplant the jury's view with that of its own unless the verdict represents a miscarriage of justice. In this case, the Plaintiff presented substantial evidence which the jury was entitled to credit. In the face of such evidence, the Court is

Court will address the relevant issues in its discussion of the motion for new trial by Defendant McCoy.

simply unwilling to grant Defendants a new trial. To do so would not serve the interests of justice.

## Amount of Damages

In assessing whether an award is excessive, the Court should determine if the size of the verdict is beyond reason, if it "shocks the conscience" of the court, or if it represents a "miscarriage of justice." *Frank v. Atlantic Greyhound Corp.*, 172 F.Supp. 190, 191 (D.D.C.1959). The Court should determine if the verdict is beyond that which a reasonable jury could have properly awarded and not simply whether the judge would have awarded less. *Graling v. Reilly*, 214 F.Supp. 234 (D.D.C.1963).

The Court finds that the verdict was excessive. Although the Court does not want to minimize the pain and suffering and mental anguish Plaintiff endured, a verdict of $4.1 million is beyond reason, especially when Plaintiff had no lost wages and proved special damages of less than $30,000. In this case, the jury award totaled more than 136 times the amount of special damages in the case, or $1,600 in damages for each day that he was misdiagnosed. Even allowing a generous award for pain and suffering, such an award is excessive.

If the court determines that the award is excessive, a remittitur may be used instead of ordering new trial. *Datskow v. Teledyne Continental Motors*, 826 F.Supp. 677 (W.D.N.Y.1993). Generally, a remittitur is used when an excessive award cannot be attributed to a particular, quantifiable error; in contrast, when "prejudicial error has infected the jury's entire consideration of plaintiff's pecuniary loss," a new trial is the appropriate remedy. *Id.* (citations omitted). Applying this standard, the Court believes that remittitur is appropriate.

Accordingly, the motion for a new trial on grounds of excessive damages is denied. However, should the Plaintiff refuse to accept remittitur, the motion for a new trial on damages will be granted.

## Procedural Errors

### 1. Defendant Bruni

Defendant Bruni claims that the Court erred in the following ways: 1) the Court gave multiple, "non-standard" instructions to the jury on damages, resulting in a disproportionate emphasis on the issue of Plaintiff's alleged damages; 2) the Court inappropriately dismissed several potential jurors because of alleged work conflicts; 3) the Court, by requesting that Defendant put on his principal "standard of care" and "causation" witness out of turn, adversely affected the presentation of his case; 4) the Court "rushed" the jury to verdict, thus preventing its careful deliberation of the issues in the case; and 5) the Court allowed Plaintiff's counsel to mischaracterize the "standard of care" required of Defendant.

As to Bruni's first argument, there was no error committed by the Court in the Court's instructions to the jury on damages. A goal of all jury instructions is clarity and precision. The jury is certainly entitled to understand what is meant by the various items of damages which they are asked to consider. It would defeat the purposes of jury instructions if the instructions were obtuse and incomprehensible. It is certainly within this Court's discretion to give instructions which are understandable and precise. Here, the instructions on damages were direct and clear.

Regarding Bruni's second argument, it is also well within the Court's discretion to dismiss potential jurors who would suffer undue hardship by sitting on the jury due to "work conflicts." It is also worth pointing out that it is not in the best interests of the parties to have "unwilling" and "unhappy" jurors. What is more, the Court recalls few, if any, "real" objections to the dismissal of potential jurors.

With respect to Bruni's third argument, Defendant requested that he be able to put his main "standard of care" and "causation" witness on the stand prior to the start of Plaintiff's case due to scheduling conflicts based on his expert's travel plans. The granting of Defendant's request by this Court was a privilege to which the Defendant

was certainly not entitled and to which Plaintiff objected. Defendant cannot now be heard to say that the Court erred by granting his request. It was up to the Defendant to ensure the availability of his own experts (either in person or through deposition testimony) given the uncertainty which necessarily accompanies the timing of events during a trial. If his witness was "rushed" it was due to the witness' travel plans.[12]

▮▮▮ As to Bruni's fourth argument, just as the Court did not rush the Defendant's witness, the Court did not "rush" the jury's verdict. The jury sat through testimony in this case for two and one half weeks. Once the issue of liability was decided, the amount of damages did not require complicated calculations. There was no issue of back pay or lost wages; the case only involved nonspecial damages. There is no requirement that a jury must deliberate for a certain period of time. Indeed, the fact that the jury rendered its verdict in so short a period of time indicates that the case was forcefully and understandably presented and shows that there was little disagreement among the members of the jury.

Finally, the Court did not err by allowing Plaintiff to present expert testimony regarding "package inserts." Such inserts contain the manufacturer's recommendations for prescribing the specific drug. Such evidence was properly admissible with respect to the "standard of care."

### 2. Defendant McCoy

Defendant McCoy also suggests that a host of procedural errors occurred, making the same arguments which this Court has already rejected. McCoy contends that the Court erred in the following ways: 1) by admitting the unqualified, unsupported opinion testimony of Dr. Resnick;[13] 2) by allowing Plaintiff to read Massey's deposition to the jury;[14] and 3) by admitting exhibits 9 and 11 relating to the creation of Providence Laboratory Associates ("PLA"). The Court finds that its rulings on these issues during the trial were not in error.

*Inconsistent Verdicts*

▮▮▮ As discussed *supra*, Defendant McCoy asserts that the verdicts as between McCoy and Providence are inconsistent and that this is a ground for a new trial. This was a highly complex case in which the Plaintiff asserted various theories of liability against each defendant. Based on the evidence presented, it was permissible for the jury to find liability against one defendant and not the other.

▮▮▮ Even if the verdicts were inconsistent, Defendant McCoy has waived his right to raise this argument. Defendant specifically requested that the Court separately instruct the jury as to Plaintiff's theories of liability against Defendant McCoy and Defendant Providence and did not object when the verdict form was sent to the jury which did not tie the liability of Defendant McCoy and Defendant Providence together. Moreover, in Defendant McCoy's proposed jury instructions, Defendant McCoy did not ask for an instruction to the effect that it would be impermissible for the jury to find McCoy liable if the jury found in favor of Providence.[15]

---

12. It also warrants mention that a trial court certainly has the ability to control its courtroom and direct counsel to proceed efficiently—the wheels of justice would grind to a halt if a court were not allowed to exercise some control over the conduct of the proceedings.

13. Dr. Resnick was one of Plaintiff's experts.

14. Ms. Massey, at the time that she gave her deposition, was an employee of Providence Laboratory Associates (PLA).

15. It is also worth noting that when the verdicts were rendered Defendant McCoy did not object that the verdicts were inconsistent. At that point in time, if the Court had determined that the

verdicts could not stand due to the inconsistency, the Court could have sent the case back to the jury. Such a practice would be far more preferable in terms of preserving judicial resources than ordering a new trial. *See, e.g., U.S. Football League v. National Football League*, 644 F.Supp. 1040 (S.D.N.Y.1986), *aff'd.* 842 F.2d 1335 (2d Cir.1988), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990) (party waived right to seek new trial under Rule 49(b) of the Federal Rules of Civil Procedure where party failed to bring purported inconsistencies to the attention of the Court before the jury was discharged); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992) (in the event of inconsistent verdicts, a party waives its right to request a new trial if it fails to bring the inconsistency to the

*Jury Impeachment*

Both Defendant Bruni's counsel and Defendant McCoy's counsel state that they met with the jury foreperson after the verdict was rendered and that the foreperson indicated that the $10 million figure mentioned by Plaintiff's counsel during the opening arguments was not erased from the minds of several jurors despite the Court's instruction to the jury to strike the figure from its consideration.[16] They also state that the jury foreperson indicated that the jury employed an impermissible method to arrive at the damage figure—each juror submitted a figure representing his or her perspective of the value of the case and the numbers were averaged.[17] Both Defendant Bruni and Defendant McCoy move for a new trial on the basis of the foreperson's statements.[18]

■ The general rule, as McCoy concedes, is that one or more individual jurors cannot impeach a verdict. A court generally cannot consider statements made by individual jurors after a verdict has been rendered in ruling on a motion for new trial. *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Sellars v. United States*, 401 A.2d 974 (D.C.App.1979). The following reasons have been cited for the general rule: 1) to discourage harassment of jurors by losing parties eager to have the verdict set aside; 2) to encourage free and open discussion among jurors; 3) to reduce incentives for jury tampering; 4) to promote the finality of the verdict; and 5) to maintain the viability of the jury as a judicial decision-making body. *Sellars*, 401 A.2d at 981.

■ With respect to so-called compromise or "quotient verdicts," the Supreme Court held in *McDonald* that, although a jury should not render a "quotient verdict," the testimony of a juror could not be used to impeach the verdict on such grounds. *McDonald*, 238 U.S. at 268, 35 S.Ct. at 785. As

such, a new trial is not warranted on the grounds that the jury may have rendered a "quotient verdict."

■ The out of court statement of the foreperson regarding the $10 million figure similarly cannot be used to impeach the verdict. The exceptions to the general rule that a jury cannot impeach its verdict are limited. Courts have held that a juror's testimony can impeach the verdict with respect to matters of "extraneous influences." For example, a party may challenge the verdict through jurors' testimony when it is discovered that the jurors have "learned of publicity unfavorable to the defendant, that outside parties had contacted them, or that their verdict had been incorrectly reported." *Sellars*, 401 A.2d at 981 (citations omitted).

■ The general rule against impeachment applies where jurors may not have understood their instructions. *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 602 n. 30 (5th Cir.1974), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974) ("Whether or not the jury misunderstood the charge of the court is not a question to be reexamined after the verdict has been rendered."). Here, the Court issued an instruction that the jurors were to disregard the $10 million figure.

This is not a case which falls within the exceptions to the general rule. This case is a perfect illustration for why the general rule is necessary. If each time the Court issued curative instructions a party receiving an unfavorable verdict could question whether the jury had followed its instructions, the finality of verdicts would be threatened. During the course of a lengthy and complex trial, it is not uncommon for many objections to be made that a certain comment was prejudicial and should be stricken. If the rule against impeachment were otherwise,

court's attention prior to the discharge of the jury).

**16.** See section of opinion regarding Defendant Bruni's renewed motion for a mistrial, *supra* at 1128, for discussion of Court's handling of the statement by Plaintiff's counsel during opening arguments that Plaintiff sought $10 million.

**17.** This discussion with the foreperson occurred outside the presence of the Court and counsel for the Plaintiff.

**18.** As noted *supra* at 1129, Defendant Bruni has waived his right to argue that the $10 million statement prejudiced the jury when Defendant Bruni withdrew his motion for a mistrial.

there would be countless post-trial proceedings where each member of the jury would be required to justify his or her decision.

Based on the foregoing, the Court denies Defendants' motion for a new trial based on the foreperson's alleged statements.[19]

## McCOY'S AND BRUNI'S MOTIONS FOR REMITTITUR

■ The power of a court to remit is derived from its authority to order new trials when it determines that a jury has awarded the plaintiff excessive damages. *Mooney v. Henderson Portion Pack Co.,* 339 F.2d 64 (6th Cir.1964). As discussed above, the Court believes damages of $4.1 million in this case are excessive, and that remittitur is the appropriate remedy.

■ Accordingly, the Court grants Defendants' motion for remittitur. In fixing the remittitur amount, the court is to reduce the damages to the maximum amount that the jury could have properly awarded. *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). Applying this standard, the Court believes remittitur in the amount of $2.1 million is appropriate. Unless Plaintiff stipulates to a remittitur of the amount awarded by the jury that exceeds $2 million, the Court will grant a new trial, limited to the issue of damages.

## Cross–Claims

Defendants McCoy and Bruni filed cross-claims against one another and agreed that the Court would resolve such cross-claims at the conclusion of the trial. Defendant McCoy requests that the Court dismiss Defendant Bruni's cross-claim and claims that McCoy is entitled to indemnification, or in the alternative, contribution from Bruni. Similarly, Defendant Bruni requests complete or partial indemnification from Defendant McCoy. Both Defendants claim that they are entitled to an apportionment of the verdict rather than being subject to joint and several liability. Plaintiff opposes Defendants' claims.

*Apportionment*

■ When a verdict is apportioned, each defendant found to be liable is only required to pay Plaintiff a certain portion of the verdict. The amount of the verdict remains the same, but each defendant is not jointly and severally liable to the Plaintiff for the total amount of the verdict. Apportionment deals solely with the rights of the defendants as against the Plaintiff rather than with the varying degrees of liability between the defendants. *National Health Labs., Inc. v. Ahmadi,* 596 A.2d 555, 562 n. 18 (D.C.App. 1991).

"[O]rdinarily, when two tortfeasors jointly contribute to harm to a plaintiff, both are potentially liable to the injured party for the entire harm." *Ahmadi,* 596 A.2d at 557. "Where the negligence of two defendants contributes to a single injury, both are jointly and severally liable, regardless of the degree of negligence on the part of each." *R. & G. Orthopedic Appliances & Prosthetics, Inc. v. Curtin,* 596 A.2d 530, 544 (D.C.App.1991), citing *Hill v. McDonald,* 442 A.2d 133, 137–38 (D.C.App.1982).

■ Here, Plaintiff prayed in his amended complaint that Defendants be held jointly and severally liable for Plaintiff's injuries and the case was tried on that basis. The verdict form, which was not objected to by Defendants, requested that the jury find in favor of either the Plaintiff or the respective Defendants on the issue of liability for Plaintiff's injuries. Not until the post trial motions did Defendants suggest that the verdict should be apportioned between them.

The Restatement of Torts states,
Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable, or practical division ... By far the greater number of personal injuries, and of harms to tangible property, are thus normally single and indivisible. Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to

---

19. For the same reasons, the Court rejects Defendant McCoy's request for this Court to hold an evidentiary hearing to determine if the jury reached its verdict properly.

make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.

Restatement (2nd) of Torts, section 433A, comment subsection (2). In this case, each defendant was a substantial factor in bringing about Plaintiff's harm.[20] Plaintiff suffered both physically and mentally as a result of McCoy's erroneous test results and Bruni's subsequent treatment. Plaintiff lived with the belief that he was dying of AIDS for seven years. The physical and emotional harm suffered by Plaintiff is simply incapable of division on any logical or reasonable basis and each is responsible to the Plaintiff for the entire harm.

Accordingly, the Court hereby denies Defendants' requests for apportionment. Both defendants are jointly and severally liable to Plaintiff for the entire amount of damages.

*Indemnification and Contribution*

▄▄ Although a duty to indemnify often arises from contract, it can also be implied in law in order to achieve an equitable result and prevent injustice. *R. & G.,* 596 A.2d at 544. The concept of indemnity in the absence of a contractual relationship is a question of equities. The D.C. Court of Appeals noted with approval the articulation of the concept by Prosser and Keeton in their treatise, The Law of Torts:

Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify has been recognized in cases where the equities have supported it. A court's view of the equities may have been based on the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.

*Id.* at 544 (quoting W. Prosser & R. Keeton, The Law of Torts § 51 (1984)). Although the Court "approved" the Prosser definition which includes reference to "a significant dif-ference in the kind or quality of their [the tortfeasors'] conduct" as a basis for indemnification, the Court was careful to point out the following "qualification"—"[s]ince we have not adopted any principle of comparative negligence, a considerable differential between the quantum of negligence cannot warrant indemnification." *Ahmadi,* 596 A.2d at 558, n. 9.

▄▄ Indemnity can be total or partial. *See, e.g., R. & G.,* 596 A.2d at 547, (citing *New Milford Bd. of Educ. v. Juliano,* 219 N.J.Super. 182, 530 A.2d 43 (1987) (Court held that initial tortfeasor could receive indemnification from subsequent tortfeasors for portion of damages)).

▄▄ Contribution is likewise an equitable concept, which recognizes that each tortfeasor found to be liable should share the burden of making the Plaintiff whole. *R. & G.,* 596 A.2d at 544, citing *Martello v. Hawley,* 300 F.2d 721, 723 (D.C.Cir.1962). Generally, joint tortfeasors shoulder the burden in equal shares and "the fact that the negligence of one may be greater than that of another does not give rise to a right of indemnity and does not change the method of equally apportioning contribution, as the law of this jurisdiction does not recognize degrees of negligence." *Early Settlers Ins. Co. v. Schweid,* 221 A.2d 920, 923 (D.C.App.1966). As the D.C. Court of Appeals noted, the rule that each of two tortfeasors pays half is consistent with the fact that the District is not a comparative negligence jurisdiction. *R. & G.,* 596 A.2d at 544.

The Court finds, as did the trial court in *Ahmadi,* that this is a "classic case for contribution between joint tortfeasors."[21] *Ahmadi,* 596 A.2d at 561. The facts in *Ahmadi* are quite similar to the facts of this case. In *Ahmadi,* the plaintiff suffered permanent paralysis after a misdiagnosis of her ailment; the plaintiff sued both the laboratory that improperly conducted a blood test and the

---

**20.** The Court has upheld the jury's verdict against McCoy and Bruni, denying their motions for judgment as a matter of law and for a new trial. The evidence presented at trial indicates that both defendants were a substantial factor in bringing about Plaintiff's harm.

**21.** The Court's decision that contribution is appropriate necessarily means that McCoy's motion to dismiss, or in the alternative, for summary judgment as to Bruni's cross-claim for indemnification is granted.

medical group that treated her after the erroneous blood test. The Court found that neither the lab, nor the medical group, were entitled to indemnity from the other under the principles of equity.

 Principles of equity simply do not dictate that indemnity is warranted for either McCoy or Bruni. The negligence of both entities combined to cause Plaintiff's injury. Both had a duty to render Plaintiff competent medical services and the jury found both to have failed. Without the initial erroneous test results by McCoy, Plaintiff would not have received the treatment from Bruni which the jury found to be negligent. McCoy could have foreseen that a doctor would rely on its test results. Bruni was certainly in a position to allay many of Plaintiff's harms—he could have retested Plaintiff when he initiated treatment or could have retested Plaintiff when Plaintiff's T-cell count was not falling. The actions of the two tortfeasors were both substantial factors in causing Plaintiff to suffer harm. To require one tortfeasor to indemnify the other under the circumstances of this case would contravene the interests of justice.

Because both were negligent, the principles of equity are served by requiring that each Defendant share in the satisfaction of Plaintiff's judgment. Because the District does not recognize degrees of fault, both Defendant McCoy and Defendant Bruni will be ordered to contribute 50% of the award.[22]

### Plaintiff's Motion for Approval of Bill of Costs

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and Rule 214 of the United States District Court Rules, Plaintiff moves the Court to approve its bill of costs submitted against Defendants Bruni and McCoy. Plaintiff requests reimbursement of $12,362.97 in costs.

The Judgment entered on June 28, 1995 provides that plaintiff "have and recover of and from the defendant(s) Larry M. Bruni M.D., P.C., Larry M. Bruni, M.D., and K.L. McCoy, M.D. and Associates, P.C. the sum of 4.1 Million Dollars ($), together with costs." Plaintiff's counsel provided an affidavit in which he states that the items enumerated in Plaintiff's Bill of Costs were necessarily incurred and that the services for which the fees were charged were actually and necessarily performed.

Defendant Bruni has filed an opposition to Plaintiff's motion for approval of bill of costs. First, Defendant Bruni contends that Plaintiff's motion is premature because the judgment has not become final. Next, Bruni contends that the following costs are not allowed: 1) $6,263.16 for deposition transcripts; 2) $712 for trial transcripts; 3) filing fees of $60.00 in the bankruptcy court; and 4) other copy costs of $300.00.

Defendant McCoy has also filed an opposition to Plaintiff's motion, challenging many of the same costs as Defendant Bruni, and contends that Plaintiff can only recover costs of $3,528.41. McCoy challenges Plaintiff's requests for costs relating to service of summons/subpoenas; for costs relating to court transcripts; for costs relating to deposition transcripts; for costs relating to filing fees with the bankruptcy court; and for costs relating to copying.

 The Clerk shall not tax the costs until "the judgment has become final or at such earlier time as the parties may agree or the Court may order." See Local Rule 214(c). Local Rule 214(c) further provides that,

A judgment is final when the time for appeal has expired and no appeal has been taken, or when the court of appeals issues its mandate.

22. Defendant McCoy suggests that for purposes of determining the amount of contribution each defendant is required to make Dr. Bruni and his P.C. should be treated as separate entities. If the Court accepted this suggestion, then the verdict would be split into thirds. However, such a result would be unjust. Throughout this litigation, Dr. Bruni and his P.C. have been treated alike because the liability of one cannot be separated from the liability of the other. Any negligence by Dr. Bruni's P.C. was directly attributable to Dr. Bruni's negligence. Accordingly, Dr. Bruni and his P.C. will be treated as one entity in analyzing the contribution that each defendant is required to make.

The Court finds that the costs should not be taxed until the judgment becomes final. Accordingly, the motion for approval of bill of costs is premature. Nevertheless, the Court will discuss Bruni's objections and McCoy's primary objections [23] to the Plaintiff's bill of costs in the interests of efficiency and will give them appropriate consideration should the judgment become final in Plaintiff's favor.

With respect to the costs of deposition transcripts, a prevailing party is allowed to recover "the cost, at the reporter's standard rate, of the original and one copy of any deposition noticed by the prevailing party, and of one copy of any deposition noticed by any other party, if the deposition was used on the record, at a hearing or trial." Local Rule 214(d)(6). The comment to the rule states that "deposition transcript costs are allowed only for depositions actually used in the case, regardless of who noticed the deposition." The comment further states that "the costs of depositions used in support of motions or pleadings may be taxed as well as depositions used at trials or hearings." Defendant Bruni suggests that the depositions of 18 persons were never used "on the record, at a hearing or trial."

Should the judgment become final in the Plaintiff's favor, the Court requires that Plaintiff and Defendants McCoy and Bruni meet and confer on this issue and submit a joint statement listing the depositions which were used and the depositions which were not used "on the record, at a hearing or trial." If the parties cannot agree, then each party should file a separate list with detailed support regarding any deposition transcript on which a dispute has arisen.

As to Defendants' objection to Plaintiff's recovery of trial transcript costs, such costs are only taxable where the transcript was "necessarily obtained for use in the case." 28 U.S.C. § 1920. The Court

believes that the recovery of such costs are appropriate. As a general rule, in complex litigation trial transcripts are necessary to ensure a well-presented case. Accordingly, should the judgment become final in Plaintiff's favor, the court will allow such costs unless further argument can be presented which would change the court's mind.

With respect to Defendants' objection that Plaintiff is not allowed to recover the Bankruptcy Court filing fee, the Court would like the Plaintiff and Defendants to provide further briefing should the judgment become final in Plaintiff's favor. Pursuant to Local Rule 214(d)(1), a prevailing party is entitled to "clerk's fees." The question is whether Plaintiff is entitled to recover the costs of the bankruptcy court filings in this case. Neither party has addressed this issue.

As to Defendant Bruni's opposition to Plaintiff's request for other copying costs of $300, such costs are specifically allowed under Rule 214(d)(9).

### Defendant Providence's Motion for Approval of Bill of Costs

Defendant Providence Hospital moves the Court pursuant to Rule 54(d) of the Federal Rules of Civil Procedure for approval of its bill of costs. Defendant requests $12,343.05 in reimbursement for costs.

The Judgment entered for Defendant against Plaintiff on June 29, 1995 specifies that "Raymond Machesney take nothing on the complaint against defendant(s) Providence Hospital and that the said defendant(s) have and recover costs from the said plaintiff(s)."

Plaintiff does not challenge Defendant's right to recover costs and does not suggest that the motion is premature.[24] Plaintiff, however, does challenge several of the costs which Providence seeks to recover. Specifically, Plaintiff contends that Defendant is not entitled to recover the following: 1) fees of

---

**23.** McCoy's more specific objections relating to which costs should not be recovered against McCoy but which could be recovered against Bruni will be discussed if and when Plaintiff's motion becomes ripe. In addition, McCoy's more specific objections relating to the cost of "rush" jobs on the service of summons/complaint as well as the costs of copying materials which

were incidental to the trial will also be discussed if and when Plaintiff's motion becomes ripe.

**24.** Plaintiff has not filed a motion for judgment as a matter of law or motion for a new trial with respect to Providence.

$5,021.25 for its expert witness costs; 2) costs of $1405.25 for depositions not used in this case; and 3) costs of $1386 for the daily copy of Dr. Resnick's testimony. In total, Plaintiff argues that $7812.50 should be deducted from Defendant Providence's bill of costs, which would leave Defendant with reimbursement for costs of $4530.55.

■■■ With respect to its request for $5,021.25 for its expert witness fees, Defendant fails to cite any authority for the taxation of expert witness fees in cases where the expert is not court-appointed. Title 28 U.S.C. § 1920 and Local Rule 214, both of which specifically define what the Clerk may tax as costs, only provide for the taxation of fees for court-appointed experts. This jurisdiction cites with approval the Supreme Court holding in *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) that § 1920 and other statutes "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." *Sexcius v. District of Columbia,* 839 F.Supp. 919, 927, n. 25 (D.D.C.1993), *aff'd, sub nom., Covington v. District of Columbia,* 57 F.3d 1101 (D.C.Cir.1995). Accordingly, the Court finds that Defendant is not entitled to have its expert witness fees taxed as costs.

■■■ Providence is also not entitled to recovery of its costs for deposition transcripts noticed by other parties to the case that were not used "on the record, at a hearing or trial." See Local Rule 214(d)(6) and discussion, *supra.* The Court, however, is unclear as to which depositions were used "on the record, at a hearing or trial." With respect to the deposition transcript costs to which the Plaintiff has objected, the Court requires that the Plaintiff and Providence submit further support detailing the factual and legal basis of their respective positions.

■■■ As to Defendant's request for reimbursement for its portion of the costs of a daily transcript of Dr. Resnick's testimony, such costs are only taxable where the transcript was "necessarily obtained for use in the case." 28 U.S.C. § 1920. Plaintiff contends that ordering the transcript was not a

necessity, but a "luxury." The Court believes that Defendant is entitled to these costs.[25] Obtaining copies of the trial transcript in a case such as this is a virtual necessity in order to ensure a "well-tried" case in which the lawyers are fully informed.

Accordingly, the Court finds that Defendant's bill of costs should be reduced by $5,021.25 to reflect the fact that the non-court-appointed expert witness fees are not recoverable. The Court retains jurisdiction to rule on whether Defendant is entitled to deposition transcript costs of $1405.25. The other costs specified by Defendant Providence are recoverable.

An appropriate order accompanies this memorandum opinion.

## ORDER

This matter comes before the Court on the following post-trial motions: 1) Defendant K.L. McCoy, M.D. & Associates, P.C.'s ("McCoy") motion for judgment as a matter of law; 2) Defendants Larry M. Bruni, M.D. and Larry M. Bruni, M.D., P.C.'s (collectively referred to as "Bruni") motion for judgment as a matter of law; 3) Defendant Bruni's renewed motion for a mistrial; 4) Defendant McCoy's motion for a new trial; 5) Defendant Bruni's motion for a new trial, or in the alternative, remittitur; 6) Defendant McCoy's motion for remittitur; 7) Defendant McCoy's motion to dismiss Bruni's cross-claim, or in the alternative, motion for summary judgment on Bruni's cross-claim; 8) Defendant Bruni's motion for implied or equitable indemnification from McCoy, or in the alternative, for apportionment of damages; and 9) Defendant McCoy's motion for indemnity, or in the alternative, for apportionment of damages; 10) Plaintiff Raymond Machesney's ("Machesney") motion for approval of bill of costs; and 11) Defendant Providence Hospital's motion for approval of bill of costs.

Based on the papers and oral argument in support of and in opposition to the motions, the Court hereby **ORDERS** as follows:

1. Defendant McCoy's motion for judgment as a matter of law be **DENIED.**

---

25. Plaintiff himself requests reimbursement for transcript costs.

2. Defendant Bruni's motion for judgment as a matter of law be **DENIED.**

3. Defendant Bruni's renewed motion for a mistrial be **DENIED.**

4. Defendant Bruni's motion for a new trial, or in the alternative, remittitur and Defendant McCoy's motion for a new trial or remittitur be **DENIED in part** and **GRANTED in part;** the motions are **DENIED** as to the request for a new trial and are **GRANTED** as to the request for remittitur. However, a new trial on the issue of damages will be granted if Plaintiff does not stipulate to a remittitur of the amount of the jury award that is in excess of $2 million.

5. Defendant McCoy's motion to dismiss Bruni's cross-claim for indemnity, or in the alternative, motion for summary judgment on Bruni's cross-claim be **GRANTED.**

6. Defendant Bruni's motion for implied or equitable indemnification from McCoy or in the alternative, for apportionment of damages is **DENIED.**

7. Defendant McCoy's motion for indemnity, or in the alternative, for apportionment of damages or contribution, is **DENIED in part** and **GRANTED in part;** the motion is **DENIED** as to McCoy's claim for indemnification and apportionment and is **GRANTED** as to McCoy's claim for contribution. Both Defendant Bruni and Defendant McCoy are ordered to contribute 50% of the award. Both are jointly and severally liable to the Plaintiff for the entire award.

8. Plaintiff's motion for approval of bill of costs is premature and the Court **defers** ruling on the motion until such time, if ever, as the judgment becomes final in favor of Plaintiff.

9. Defendant Providence's motion for approval of bill of costs is **GRANTED in part, DENIED in part;** the motion is **GRANTED** in so far as Defendant's trial transcript costs and all other costs as to which Plaintiff has not objected; the motion is **DENIED** in so far as Defendant's request for costs for expert witness fees.